[Crim. No. 5638.   Second Dist., Div. Three.   July 30, 1956.]

THE PEOPLE, Respondent, v. DANIEL RAMIREZ et al.,
Appellants.

James S. Fitzpatrick for Appellants.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

VALLÉE, J.—Defendants were convicted of burglary by a jury.  They appeal from the judgment and sentence and from the order denying their motion for a new trial.  Their

only contention is that the district attorney was guilty of prejudicial misconduct.

A B. F. Goodrich store was located at 135 East Anaheim in Wilmington. The morning of September 30, 1955, defendants and one Elmore were in the store. Defendant Ramirez had a charge account. He asked Bermont, a salesman, if he could charge a battery for his automobile to the account. The manager of the store, Johnson, and Bermont said he could. The battery was then installed in the car, a 1950 Buick 4-door. At that time Johnson noticed that the automobile had a temporary license on the windshield. He did not see a license plate on the car. Defendants had been in the store a few days prior to September 30 asking for an item which the store did not have. They also had been in the store about two months previously and Ramirez had bought seat covers. Among other items in the store on September 30 were Motorola television sets. As one looked through the display windows from the street he could see a television set.

About 8:15 p. m. on September 30 Johnson and Bermont secured the doors and windows, closed the store, and went to a restaurant adjacent to it. The display windows were then intact. All lights in the store were left on. There was a lighted driveway about 7 feet wide along one side of the store building. Johnson and Bermont left the restaurant about 8:45 p. m., walked alongside the store toward the driveway to go to their cars parked in the rear. Bermont looked through one of the windows to the driveway and saw two men attempting to load a television set into the front seat of the automobile in which the battery had been installed that morning. Defendant Ramirez was at the wheel of the automobile. The car began to move with defendant McAfee trying to push the television set into it. The set caught on the side of the building, hitting a stanchion, and fell into the street. McAfee got into the car and it continued on. Part of a curb-feeler was found on the sidewalk near the driveway. Its clip-top was missing. That type of curb-feeler had been handled by the store. One of the display windows was entirely "knocked out," leaving a hole large enough so that a man "could have walked right in" standing up.

On October 3, 1955, a police officer talked to Ramirez in Wilmington. The automobile was there. Ramirez told the officer it was his car. The part of the curb-feeler which was not found near the store was on the right rear fender. The

automobile had a temporary license plate on the windshield. It did not have a regular license plate.

Defendants testified, and by their testimony and that of other witnesses sought to establish an alibi. On cross-examination Ramirez testified he had been convicted of burglary in 1938, of robbery in 1947, and that he was on parole. McAfee testified he had been convicted of burglary in 1945, of burglary in 1950, of escape in 1951, and that he was on parole.

The claim is that the district attorney was guilty of prejudicial misconduct in his argument to the jury. The parts of the argument complained of are copied in the margin.[1]

---

[1] ''These defendants, of course, based on the evidence here which we have offered for your consideration, are not reputable citizens. They don't come into court here clean in reputation. Among other things, this evidence of McAfee having suffered three previous convictions of very, very grave and serious felonies is not the mark of a good citizen. The law, in its wisdom, permits that here.

''For example, I suppose you people realize that these who have been through the mill of this criminal business before gain experience as they go along and become more cunning and more aware of ways to duck responsibility for their criminal acts, and the law, in its wisdom, also allows us to produce evidence for that reason.

''The other partner here, Mr. Ramirez, has suffered two serious and two very grave prior felony convictions, which is offered for the same reason. Of course they have learned that the alibi, if true, I concede that we wouldn't even have instigated the prosecution in this case. However, it is for you to determine whether or not that alibi of being in Tijuana, or rather this incident of being enroute to Tijuana is, in fact, a true alibi.''

''In other words, they raise a conflict here in the evidence by presenting the alibi which, if it is true, you must find them innocent. . . .

''I call your attention in that regard to look at the character of these people and the details I mentioned earlier.''

''This is one of the rare ones where there were two witnesses at the scene and we have all this wealth of evidence against these defendants, and also the type of persons they are.''

''In the first place, when you begin to see people committing serious crimes, that is one thing when they get caught the first time. When they get caught the second time, that is something else, something different and something more aggravating. When it happens again and again and again and again, then it gets into the proposition where we have a name for that too and that is the well-known name, you all know what it means, recidivism—in other words, can't stay away from it.

''You find it in every-day language and you also find it medically. Get him in on the same thing, turn him loose on the same thing, right back on the same thing, and the law allows us to do that. . . .

''In that connection, as counsel stated, as counsel stated, [sic] they would indeed be stupid to perpetrate a burglary under these conditions. It is all well and good to take that approach to it. Again, that is half the story. He didn't tell you what kind of crimes or what types of crimes they were convicted of in the past. It is not proper to go into that, I realize it, but he leaves you suspended. But there is one thing you can depend on and that includes the proof of the prior conviction of felonies and that is, as I stated to you, as those records indicate,

They were to the effect that defendants were recidivists, not reputable citizens, did not come into court "clean in reputation because of their prior convictions; they were experienced in the ways of the criminal; and the admissions of prior convictions were "real evidence." There is no doubt that the district attorney went far beyond the limits of proper argument. No evidence of good reputation was introduced by defendants. The fact that defendants had been convicted of felonies was admissible and could be considered by the jury only for the purpose of impeachment—as affecting their credibility.

The question is whether the misconduct resulted in a "miscarriage of justice." (Const., art. VI, § 4½.) ▇ The latest expression of the Supreme Court stating the test for determining whether error has resulted in a miscarriage of justice is "[t]hat a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].) No objection to the argument was made nor was the court requested to admonish the jury to disregard it. The court instructed the jury that the fact a witness had been convicted of a felony could be considered only for the purpose of judging the credibility of the witness and that such fact did not necessarily impair the credibility of the witness. The trial judge, in denying the motion for a new trial, determined that defendants had not been prejudiced.

▇ Applying the test stated to the record, we are satisfied

these are not reputable people, and that evidence is also admitted as a part of character evidence. It also goes this far—that they are recidivists.

"I wasn't there when they admitted committing the last two crimes. I don't think Mr. Hix can find fault with this or tear it to pieces. Don't you all agree that it was very stupid for anybody to commit any crime? And the fact that it was stupid for them to have committed crimes in the past speaks for itself also for this reason: They got caught, didn't they? It is in the record here. It is that simple."

"I want to give you a couple of criteria. You have heard the evidence in this case. You have seen things like the admission of the defendants on these prior convictions, for example, which is real evidence. There is no speculation in that. . . . As a matter of fact, if you saw them out in the driveway of your house, lurking out in front of it, I think you people from what you know about them, based on the evidence in this case, would really keep a cool eye on them, loitering around very long, you would be the first to blow the whistle for a cop because consciously in your own mind you know that you can't trust them as logical people."

it is not reasonably probable that a result more favorable to defendants would have been reached had the district attorney not stepped over the permissible line. The evidence is almost conclusive—it unerringly points to guilt. The attempted alibi was shown to be false in various particulars. From an examination of the record we are satisfied that the misconduct complained of has not resulted in a miscarriage of justice.

As we said, defendants appealed from the ''judgment and sentence.'' ▮ The judgment in a criminal action is the sentence. (*People* v. *Tokich,* 128 Cal.App.2d 515, 519 [275 P.2d 816].) Affirmance of the judgment carries with it affirmance of the sentence.

The judgment and the order denying a new trial are affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.