[Crim. No. 3152. First Dist., Div. Two. Aug. 27, 1956.]

THE PEOPLE, Respondent, v. ROGER E. SIMMS, Appellant.

A. Don Duncan for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, Thomas C. Lynch, District Attorney (San Francisco), and William B. Acton, Assistant District Attorney, for Respondent.

DOOLING, J.—A five count indictment was filed against defendant. Each count accused him of the crime of felony, grand theft (Pen. Code, §§ 484 and 487.) After a jury trial he was found guilty of the crimes as charged in counts three and four and not guilty of the crimes charged in counts one, two, and five. His motion for new trial was denied and he was granted probation. He appeals from the order granting probation and from the order denying his motion for a new trial.

Count three stated that on or about October 5, 1953, appellant took $500, the personal property of Lloyd Stark. Count four stated that on or about November 20, 1953, appellant took $345, the personal property of Robert Blackmore. The other three counts charged similar crimes with other persons.

The theory of the prosecution was that appellant obtained money from these people by means of false pretenses. In general the district attorney sought to prove that by intentionally making false representations appellant attempted to and did induce certain people to buy automatic vending machines from him to their financial loss. Inasmuch as appellant was acquitted of the charges as contained in three of the counts, the evidence pertaining to those counts will only be referred to in so far as it relates to the counts on which he was found guilty.

Lloyd R. Stark testified that he first met the appellant in October of 1953. He had noted the following advertisement in the San Francisco Examiner:

"Automatic Vending Co. will put more money in your pocketbook servicing our units in cafes, depots, clubs, etc. No age limit, no selling. Earn $49 to $627 per month, spare or full time. $398 cash needed which is secured. Vend-o-Matic Co., 742 Market Street, Suite 230."

A telephone number followed. It was stipulated that appellant placed this ad in the paper. In response to the ad Mr. Stark attempted to call appellant and was told by a telephone answering service that appellant would contact him. Shortly thereafter appellant called on Stark at his home in Daly City, San Mateo County. Appellant brought certain catalogues with him containing descriptions of various types of vending machines and certain statements or schedules to show what a particular machine would make over a period of time. Mr. Stark picked out 10 machines that he thought he

could afford. When asked if anything was said to him by appellant as to what the ten machines would net him a month Stark answered: "A. He told me that they were making at least $127 a month, the machines that I was to pay for, or that I had bought, were making that much money." He further stated that appellant told him that the machines had been on location for some time. Stark said that he believed appellant and that when he entered into an agreement with him he believed him. Stark entered into the agreement with appellant to buy ten machines either the first time he saw him or the next day when appellant called on him at his home again. Stark agreed to pay $717.75 for the ten machines He gave appellant his check for $500 but never paid the balance because he felt he was not obligated to do so since the machines did not make any money. Appellant then showed Stark the locations of the machines he had bought. The return realized by Stark on the machines was not satisfactory to him and he tried to contact appellant. He testified:

"A. If the machines were not making the money that they were supposed to make, that I could call him back and he would take the machines back and give me my money back because I was in the Navy and subject to transfer at any time.

"THE COURT: Anyway, he promised the money back?

"A. He promised the money back, and they were not making the money, so I called him up and tried to get ahold of him and I couldn't contact him.

"MR. ACTON: Q. And how many times did you try to contact him? A. Several times."

When Stark did contact appellant he told him that he had learned that the machines had only been on location for two or three days before he purchased them and appellant did not deny this. Stark left the machines on location about two months and the sum total of receipts on the ten machines was about twenty dollars. Appellant refused to take the machines back.

Robert L. Blackmore also answered appellant's advertisement with respect to vending machines. About the middle of October 1953, appellant came to Blackmore's home. Blackmore told appellant that he was interested in three-slot candy bar machines placed in factories on an established route. Appellant told Blackmore that he had an established route in the area desired by Blackmore that he could turn over to him. The cost of five machines of the type desired by Blackmore

was a little over a thousand dollars. Blackmore told appellant that he already had 10 machines and appellant stated that he would take these as part payment to the extent of $695. Blackmore said he would try to raise the balance needed to buy the machines.

About two weeks later appellant returned to Blackmore's house. An agreement was then entered into under which appellant would buy a car belonging to Blackmore's brother. Appellant was to give the brother $345 less than the purchase price of the car and this amount was to be credited to Blackmore so that he might buy the machines. The car transaction was completed in San Francisco a few days before Thanksgiving. Blackmore testified that at that time they "talked about the machines and how much they would gross, and where they would be." Appellant told him: "These machines would gross, average a little over $30 each a month." Appellant told him that the machines were then grossing that amount of money and that they would gross that amount. He further stated that these machines were then on location in factories.

Blackmore stated that he saw appellant about February 2, 1954, but it later developed that he was mistaken in this recollection and he next saw appellant about the middle of March 1954. Apparently, Blackmore tried to contact appellant without success and then complained to the district attorney's office. Appellant then called on Blackmore and explained that he had not been able to show him the locations of the machines because he had been so busy. He brought with him a post-dated check (April 1, 1954) for $345 for Blackmore's brother to show his "good faith." About April 2, 1954, he returned to show appellant the locations of the machines and asked for and received the return of his check, payable to Blackmore's brother. Appellant and Blackmore executed a contract to buy the machines. Appellant then showed Blackmore the locations of these machines. They were placed in service stations and were one-slot rather than three-slot machines. Up until this time Blackmore had thought that the machines were placed in factories. When Blackmore questioned appellant about the location of the machines appellant stated that factory machines were too expensive. After seeing the location of the machines Blackmore signed an owner's-operator's location list which read in part:

"Received from Vendcraft Co., Independent Distributor of Automatic Merchandise Machines, the above list of satisfactory locations. Received five National King automatic vending machines in good order and installed on the above locations satisfactorily."

Blackmore testified that appellant told him that the machines had been on location in these service stations quite some time and they "were paying very profitable." Blackmore was asked:

"Q. Now, did you believe Simms when he told you that these machines would bring in $30 a month each?" He answered: "Yes, sir."

"Q. You relied on the truth of what he told you? A. Yes."

Blackmore left these machines in the service stations three weeks and received a total of $11 from the five of them. He then tried to contact appellant by telephone and mail but was not successful.

█ We are satisfied that the convictions must be reversed for errors in the giving of conflicting, confusing and inapplicable instructions and for flagrant misconduct of the prosecuting attorney in his argument to the jury.

█ Specific intent to defraud is an essential element of the crime here involved. (*People* v. *Ashley,* 42 Cal.2d 246, 264-265 [267 P.2d 271]; *People* v. *Jones,* 36 Cal.2d 373, 377 [224 P.2d 353].) The court instructed the jury as follows on the question of intent:

1. "The word 'wilfully,' when applied to the intent with which an act is done or omitted, as used in my instructions, implies simply a purpose or willingness to commit the act or make the omission in question. The word does not require in its meaning *any intent* to violate the law, or *to injure another,* or *to acquire any advantage.*

". . . . . . . . . . . .

2. "Section 1963 of the Code of Civil Procedure, Subdivision 2 sets forth the following presumption: 'That an unlawful act was done with *an unlawful intent;*' and this presumption applies to a criminal case and in no other type of case." (Emphasis ours.)

The court further instructed the jury correctly that: "The defendant must have intended to defraud the person named. . . ."

The first instruction above quoted expressly advised the jury that there need be no intent "to injure another or to acquire any advantage."

The court in *People* v. *Geibel*, 93 Cal.App.2d 147, 177 [208 P.2d 743], held the giving of this same instruction prejudicially erroneous in a forgery case, which also requires the specific intent to defraud, in spite of the fact that the court also gave a correct instruction to the latter effect. The court said of the two instructions: "At most it created a conflict and normally would serve only to confuse or mislead the jurors and make it impossible to determine whether, in their deliberations, they followed the law as correctly or incorrectly given to them."

In this connection the court instructed the jury: "Do not single out any certain sentence or any individual point or instruction and ignore the others, but consider all the instructions as a whole, and regard each in the light of all the others."

Who can say how the jurors, considering the conflicting instructions "as a whole and regarding each in the light of the others," as they were instructed to do, may have resolved the conflict in these instructions? As the Supreme Court said in *People* v. *Kirkes*, 39 Cal.2d 719, 729 [249 P.2d 1]:

"It is impossible to determine from the evidence which of the conflicting instructions formed the basis of the verdict reached by the jury. Under such circumstances, inconsistent instructions may constitute reversible error."

The possible confusion of the jury was compounded by the second instruction that there is a presumption of intent from the commission of an unlawful act. Where the unlawfulness of the act depends on the specific intent it is reasoning in a circle to say that unlawful intent is to be presumed from the commission of an unlawful act. But can the jury be expected to engage in such a refinement of reasoning?

The correct instruction advised them that the defendant must have intended to defraud the person named. It did not advise them how they should determine the fact of such intent. But the second instruction advised them that the commission of the unlawful act created a presumption of unlawful intent. ▮ Following the two instructions the jury might well conclude that if the representations were in fact false the presumption required a finding of the specific intent, which is contrary to all the decided cases. (*People* v. *Snyder*, 15 Cal.2d 706, 708 [104 P.2d 639]; *People* v. *Miller*, 2 Cal.2d 527, 532-533 [42 P.2d 308]; *People* v. *Booth*, 111 Cal.App.2d 106 [243 P.2d 872]; *People* v. *Wong*, 83 Cal.App.2d 60, 65 [187 P.2d 828].)

In his argument to the jury the prosecuting attorney engaged in much inflammatory and improper argument. We limit ourselves, without condoning the other acts of misconduct, to the following:

"I was just appointed . . . and I took hold of the Simms case, saw that Mr. Bosley [his predecessor] hadn't given it the attention I thought he should; I said to Mr. Lynch, the District Attorney, 'We can't tolerate this and we won't tolerate it in the City, a man that can beat and lie and cheat and defraud and bunco and get by with it without prosecution,' I said, 'The guilt, as shown by this evidence, demands that we prosecute the man and serve notice on other bunco men if they come to San Francisco and cheat and loot and rob our citizens, they will be prosecuted, and a jury of San Franciscans will convict them.' "

The prosecuting attorney thus violated the well established rule that he may not express his own opinion of the guilt of a defendant based upon evidence not before the jury. This case was tried in February, 1955. In October, 1952, the Supreme Court had decided *People v. Kirkes, supra,* 39 Cal. 2d 719. In that case the court had said at page 723:

"It is well established that statements by the prosecuting attorney, not based upon legitimate inferences from the evidence, to the effect that he has personal knowledge of the defendant's guilt and that he would not conduct the prosecution unless he believed the defendant to be guilty are misconduct."

In the argument quoted the prosecuting attorney deliberately flouted this pronouncement of our highest court. The case was a close one. The jury actually acquitted appellant on three counts in which the evidence was not dissimilar from that given in support of the two counts on which appellant was convicted. It is true that appellant's counsel did not object to this particular portion of the argument. Neither did appellant's counsel object in *People v. Kirkes, supra,* and yet the court reversed, citing the settled rule that "where the comment is of such character that the error could not be cured" the appellant may urge the question on appeal although he made no objection in the trial court. (*People v. Kirkes, supra,* 39 Cal.2d p. 726.) The conduct of the prosecutor in this case justifies a quotation from *People v. Wilkes,* 44 Cal.2d 679, 687 [284 P.2d 481]: "The conduct here, as in previous cases where it has been rebuked but not held prejudicial, was manifestly deliberate. Regrettably, the circum-

stances make it apparent that we must recognize and deal with the fact that such conduct will not be discontinued as long as it is merely rebuked.''

The errors discussed require a reversal but other questions argued will recur on a new trial and for that reason will be briefly discussed.

█ Appellant argues that there was no venue in San Francisco of the Clark count. The representations in that case were all made in San Mateo County and the money was paid to and received by appellant there. However the negotiations were initiated by the advertisement placed in the San Francisco Examiner in San Francisco by appellant. Penal Code, section 781, provides:

''When a public offense is committed in part in one jurisdictional territory and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more jurisdictional territories, the jurisdiction of such offense is in any competent court within either jurisdictional territory.''

This section has been liberally construed so that if the conduct necessarily leading up to the commission of the crime takes place in one county ''venue may lie in a particular county even though the acts done there are not sufficient, considered alone, to constitute an attempt.'' (*People* v. *Buffum*, 40 Cal.2d 709, 717 [256 P.2d 317]; *People* v. *Rodriguez*, 100 Cal.App.2d 549, 552 [224 P.2d 49]; *People* v. *Ortez*, 120 Cal.App.2d 469, 472 [261 P.2d 325]; *People* v. *Anderson*, 3 Cal.App.2d 521 [40 P.2d 270]; see the discussion in *People* v. *Megladdery*, 40 Cal.App.2d 748, 774-777 [106 P.2d 84].) In our judgment enough was shown to support the venue in San Francisco.

We are also satisfied that the evidence is sufficient on both counts. Accepting the argument that representations as to future profits will not support a conviction, in the Clark case there was testimony that appellant represented that the machines sold to Clark were making at least $127 per month (a representation of existing fact) and of a promise to take them back if they did not bring in that income and testimony of reliance on those representations. █ A promise made without present intent to perform it will support a conviction of obtaining money by false pretenses. (*People* v. *Ashley*, *supra*, 42 Cal.2d 246.) █ The evidence that the machines produced much less than $127 per month after they were sold to Clark would support the inference that they were not pro-

ducing $127 per month in the same locations before Clark got them.

In the Blackmore case the evidence was that the machines to be sold were established in factories and were three-slot machines and Blackmore testified that he relied on the truth of what appellant told him. After Blackmore had signed the contract and given appellant back his check he learned for the first time that the machines were one-slot machines and located in service stations. He further testified that having already signed the contract and delivered the check he then believed that he was bound to proceed.

The five counts were properly joined under Penal Code, section 954, which permits the joinder of "two or more different offenses of the same class of crimes or offenses" (*People* v. *McClain*, 55 Cal.App.2d 399, 402 [130 P.2d 978]) and the court did not abuse its discretion in denying appellant's motion for a severance (*People* v. *Jennings*, 121 Cal.App.2d 120, 122 [262 P.2d 611]).

It was also proper for the court to refuse appellant the right to move for dismissal or advised verdict on any count before the close of the entire case, nor can appellant show any prejudice from such action. Apart from any other consideration the making of similar false representations in the other four counts could be considered by the jury as corroborative of the making of the false representations in each particular count. (*People* v. *Ashley*, *supra*, 42 Cal.2d 246, 268; *People* v. *Weitz*, 42 Cal.2d 338, 347 [267 P.2d 295].) Thus the prosecution's case on any one count was not complete until the evidence on all five counts had been produced.

The court properly instructed the jury that it could find such corroboration in the making of similar representations in the other counts and the evidence is sufficient to constitute such corroboration. Appellant complains however of an instruction that even if the jury found appellant not guilty on one count "you can consider the evidence with respect to that count in connection with the evidence of any other count solely for the purpose of showing whether there was any common scheme or design as far as any other count is concerned." The instruction is basically correct, but it should have been qualified by some admonishment that the jury could only consider such evidence as they found to be true despite the verdict of acquittal. It is now settled that evidence of a particular transaction is admissible even though the defendant was acquitted of crime in that trans-

action and the fact of the acquittal goes only to its weight. (*People* v. *Raleigh,* 83 Cal.App.2d 435, 442-443 [189 P.2d 70] ; *People* v. *Fox,* 126 Cal.App.2d 560, 569 [272 P.2d 832].)

The court gave an instruction on reasonable doubt which departed from the established formula. (Pen. Code, § 1096.) Without determining whether the instruction correctly stated the law we refer to *People* v. *Castro,* 68 Cal.App.2d 491, 497 [157 P.2d 25], where the court said : "Trial courts have been repeatedly admonished to follow . . . the language of section 1096. Failure to do so is simply inviting error." It was to eliminate such claims of error as here made that the legislature enacted Penal Code, section 1096a.

An instruction given by the court on the distinction between larceny by trick and device, theft by false pretenses and embezzlement served no purpose, since the other two crimes were not involved. It should not be repeated if the case is tried again.

Other claimed errors need not be noticed.

Judgment and order denying motion for new trial reversed.

Nourse, P. J., and Kaufman, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 25, 1956.