[Crim. No. 3322. First Dist., Div. One. May 16, 1957.]

THE PEOPLE, Respondent, v. ROBERT LINYARD, Appellant.

52

Edward T. Mancuso, Public Defender (San Francisco), and Claude D. Perasso, Deputy Public Defender, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Marvin J. Christiansen, Deputy Attorney General, for Respondent.

PETERS, P. J.—Robert Linyard and two others, a man and a woman, were charged with illegal possession of heroin in violation of section 11500 of the Health and Safety Code. Linyard, prior to trial, admitted to three prior narcotic convictions. All three pleaded not guilty. Prior to trial the female defendant changed her plea to guilty. The two remaining accused were jointly tried before a jury. Linyard was found guilty and his codefendant not guilty. Linyard appeals from the judgment of conviction and from the order denying his motion for a new trial.

The evidence is amply sufficient to sustain the finding of guilt. The three defendants were arrested in room 11 of a rooming house on Sutter Street, in San Francisco, on April 25, 1956. The evidence as to whether defendant resided in the rooming house prior to the arrest was conflicting, but a police inspector testified that there was clothing of defendant in the room. The police were informed that an offense was occurring in room 11 by a person who lived in the building adjoining that in which defendants were arrested and whose bathroom was on the same level and about 8 feet distant from room. 11. He could see from his bathroom window into room 11. On several occasions he saw several people, including appellant but not including his codefendant, bind their arms with a bandana, withdraw something from a spoon with a needle, and inject the needle into their arms. About April 20, 1956, he reported the matter to the police. They called at his apartment several times, observed what was happening in room 11, and made the arrests on April 25, 1956.

One of the officers testified that he ''saw different people entering the place, female and male, sitting down on the chairs, one and two at a time, wrapping tourniquets around their arms, and injecting some type of fluid into their arms.'' On the night of April 25th he saw two men and a woman in room 11. One of the men was wearing a brown sport coat and a brown hat, and was seen heating a spoon over some matches. This officer and his associate left their observation spot and proceeded immediately next door to room 11. The officers forced their way into the room and arrested the three occupants. These were defendant, his codefendant and the woman who subsequently pleaded guilty.

The other officer corroborated the first officer and also testified that he observed the man dressed in brown tie a rag around his left arm and insert a needle into his flesh.

It took the officers about three minutes to go from the neighbor's apartment to room 11. When the officers broke in, appellant was the only person present dressed in brown and wearing a hat, and was observed kneeling on the floor and withdrawing a needle from his arm. This he threw under the bed when the officers broke in. His arm was bleeding.

The police found a bindle containing 3 grains of heroin and assorted narcotic paraphernalia in the room. Appellant admitted to the officers that in the past he had used heroin, and, upon arraignment, admitted several prior narcotic con-

victions. At the trial he denied any knowledge that narcotics or narcotic equipment were in room 11 prior to his arrest.

■ On the evidence the case is not a close one. The evidence is substantial and convincing to support the implied finding that appellant at the time and place involved was knowingly in the possession of heroin. (*People* v. *Williams*, 121 Cal.App.2d 679 [263 P.2d 853]; *People* v. *Bock Leung Chew*, 142 Cal.App.2d 400 [298 P.2d 118]; *People* v. *Denne*, 141 Cal.App.2d 499 [297 P.2d 451].)

The major contentions of appellant center around claimed misconduct on the part of the district attorney. It is first urged that the district attorney improperly attempted to impeach appellant in connection with his prior convictions.

■ Defendant testified on his own behalf. In such event the prosecution may impeach by showing prior felony convictions, even where such priors are admitted on arraignment. When a defendant takes the stand he becomes subject to the same rules for testing his credibility as any other witness, including impeachment as provided in section 2051 of the Code of Civil Procedure. (*People* v. *Cobb*, 45 Cal.2d 158 [287 P.2d 752]; *People* v. *David*, 12 Cal.2d 639 [86 P.2d 811]; *People* v. *Romer*, 218 Cal. 449 [23 P.2d 749]; *People* v. *Arnold*, 116 Cal. 682 [48 P. 803]; *People* v. *Hickman*, 113 Cal. 80 [45 P. 175].) Appellant concedes that this is the rule, but contends that prejudicial error was committed during the following portions of his cross-examination:

"Q. Have you ever been convicted of a felony, Mr. Linyard? A. No.

"Q. Weren't you convicted of possession of heroin, a felony? A. Well, I did county time. It was [a] misdemeanor.

"Q. Weren't you given probation on condition of county time? A. I don't know how—I couldn't recall what the deal was.

"Q. Of course, you did time more than once, on possession?

"MR. PERASSO: Your Honor, I am going to object to this line of questioning. If the district attorney disbelieves his statement that he was never convicted of a felony, there's other methods of proving it.

"THE COURT: I will sustain an objection. That was for the purpose of proving knowledge. I think you have proven that——

"MR. CAMPBELL: All right, your Honor.

"THE COURT:—by his testimony."

■ It is appellant's contention that, upon a defendant

denying having been convicted of a felony, for impeachment purposes the prosecution is limited by section 2051 of the Code of Civil Procedure to the introduction into evidence of the record of conviction. That section contains no such limitation. It permits the showing of a prior felony conviction "by the examination of the witness, *or* the record of the judgment." While the most frequently used method of impeachment in case of a denial of the prior is by the introduction of the record of conviction (*People* v. *Williams,* 32 Cal.2d 78 [195 P.2d 393]), the prosecution has as an alternative a limited right to cross-examine on the prior convictions. (*People* v. *Chenault,* 74 Cal.App.2d 487 [169 P.2d 29] ; *People* v. *Bauweraerts,* 164 Cal. 696 [130 P. 717] ; *People* v. *Harvey,* 22 Cal.App.2d 532 [71 P.2d 841] ; *People* v. *Kepford,* 52 Cal. App. 508 [199 P. 64].) Such cross-examination is limited by the requirement that it must be conducted in good faith.

In the instant case the appellant had admitted that he had been convicted in the superior court of two prior violations of section 11500 of the Health and Safety Code, and had been convicted in the municipal court of a prior violation of section 11721 of the same code. The prosecutor was entitled to believe that at least one of those convictions was a felony conviction because section 11712 of the Health and Safety Code provides that in the event "any" prior narcotic conviction is charged and found to be true, the defendant "shall be imprisoned in the state prison," which, of course, makes the offense a felony. (Pen. Code, § 17.) Moreover, the prosecution was required to show that defendant had knowledge of the narcotic nature of the drug he was charged with possessing. Even evidence of misdemeanor convictions is admissible to show such knowledge. (*People* v. *Spencer,* 140 Cal.App.2d 97 [294 P.2d 997].)

It will be noted that the questioning was not prolonged, the jury was admonished, and the evidence of guilt was clear and convincing. Even if it be held that the quoted cross-examination were erroneous, it could not possibly have been prejudicial. (*People* v. *Bauweraerts,* 164 Cal. 696 [130 P. 717] ; *People* v. *Bigelow,* 104 Cal.App.2d 380 [231 P.2d 881] ; *People* v. *Elliott,* 104 Cal.App. 107 [285 P. 401].)

The appellant next contends that the prosecutor improperly and prejudicially attempted to impeach him on collateral matters. Immediately after the cross-examination above quoted the prosecuting attorney continued as follows:

"Q. On this evening of April 25th, 1956, you were not at 1772 Sutter Street for the purpose of visiting your wife and children, were you? A. Yes, I was.

"Q. Did you see them that evening? A. I saw them. I saw them every time I was there.

"Q. You have been separated from your wife and children some time, haven't you? A. My daughter has just moved over to Frisco with her mother. She's been with me all the time.

"Q. Didn't your wife just have you put in jail for not paying her support? A. She didn't have me put in jail.

"Mr. PERASSO: Your Honor, I am objecting to this line of questioning. I think it is time—the second time around on this type of questioning. I am going to have to make a motion for a mistrial, at this time, upon the conduct of——

"THE COURT: I deny the motion for mistrial; I will sustain an objection to the question and I will instruct the Jury to draw no inference of any kind, whatsoever, from the questions of the district attorney as to the support of his family."

It is asserted that these questions about nonsupport were asked in bad faith for the sole purpose of degrading appellant on a collateral matter. The attorney general argues that the questions were proper for the reason that appellant had testified on direct examination that his presence in the rooming house was for the purpose of seeing his wife and two children who lived in the building. It is argued that the questioning objected to was proper in an attempt to discredit this explanation given by appellant for his presence. The case of *People* v. *Dole*, 122 Cal. 486, is relied on, where, at page 491 [55 P. 581, 68 Am.St.Rep. 50], it is stated: "Any fact may be called out in cross-examination which a jury might deem inconsistent with the direct testimony of a witness, and a defendant testifying in his own behalf is in this respect put upon the same plane with other witnesses." (See also *People* v. *Zerillo*, 36 Cal.2d 222 [223 P.2d 223].) This reasoning seems correct. Moreover, even if the questions should not have been asked, in view of the clear and convincing evidence of guilt, their asking could not have been prejudicial.

Appellant next complains of alleged prejudicial remarks of the prosecuting attorney in his arguments to the jury. These remarks are three in number:

1. The prosecutor observed that where male and female defendants are involved in narcotic, prostitution or pimping charges, the woman always comes forward and attempts to

take the "rap" for her male codefendants. He continued: ". . . But, rest assured, ladies and gentlemen, that just because Arlene Laccetti says that that heroin was hers, it does not mean that it wasn't also jointly in the possession of the defendant."

2. The prosecutor also stated that narcotics were a great evil, that it was the number one crime problem, that there was nothing more vicious than the narcotic traffic; that all the things the jury may have heard about narcotics were not exaggerated; that once a person acquires a narcotic habit it costs him from $5.00 to $50 a day to supply the habit and "they have to turn to crime to afford it"; and that no doctor or hospital in the United States will prescribe heroin because it is so habit-forming.

3. In his concluding remarks the prosecutor stated that if "because of some feeling, that you think your verdict should be swayed by some pity or sympathy for these defendants or some feeling that [the] prosecution has not proved these two defendants guilty beyond every single doubt, instead of just beyond a reasonable doubt, if you have such a feeling as that, ladies and gentlemen, we might just as well wipe every law off the books, because, in the final analysis, all our laws are in your hands as jurors and, I ask you again, only to use your common sense in this case and you will come to the correct conclusion that these two defendants are guilty as charged."

Appellant argues that these remarks were in no way connected with the evidence introduced and were calculated to inflame the jury. He cites, in this connection, *People* v. *Simms,* 144 Cal.App.2d 189 [300 P.2d 898]; *People* v. *Ramirez,* 143 Cal.App.2d 554 [300 P.2d 106], and *People* v. *Ortez,* 120 Cal.App.2d 469 [261 P.2d 325]. In the Ramirez case, even though the prosecutor "went far beyond the limits of proper argument" (p. 557), the error was held not to be prejudicial and the judgment of conviction was affirmed. The Ortez case did not involve improper argument to the jury but involved claimed improper cross-examination of the defendant. The court found that the questions were asked in good faith, held the error to be nonprejudicial, and affirmed the conviction. The Simms case did involve "flagrant misconduct of the prosecuting attorney in his argument to the jury" (p. 198) in which he gave his personal opinion of the guilt of defendant. In addition, the trial court gave conflicting and misleading instructions. The judgment of conviction

was reversed, the appellate court holding that, on the facts, the case was "a close one." (P. 200.)

 The prosecuting attorney undoubtedly went too far in stating that female codefendants always take the "rap" in narcotics and other cases. The other two matters discussed were within the realm of permissible argument. The reference to narcotics as a social evil simply called attention to a fact well within the common knowledge of all. (*People* v. *Head,* 108 Cal.App.2d 734 [239 P.2d 506].) The statements of the prosecutor contained in the last mentioned statement above was within the proper sphere of argument. It went no further than to tell the jury that, based on the evidence introduced, the prosecutor believed appellant was guilty. This was permissible argument. (*People* v. *Head,* 108 Cal. App.2d 734 [239 P.2d 506]; *People* v. *Kirkes,* 39 Cal.2d 719 [249 P.2d 1].)

 The error committed here could not possibly have been prejudicial. This is not a case like *People* v. *Kirkes,* 39 Cal.2d 719 [249 P.2d 1], which involved "flagrant misconduct" on the part of the prosecuting attorney and where, on the evidence, "the scales of justice [were] somewhat evenly balanced." (P. 727.) Here the error was not flagrant and the evidence of guilt is clear and convincing. Here there was eyewitness testimony of two police officers and a neighbor, plus the uncontradicted fact that there were narcotics and narcotic equipment in the room where appellant was arrested.

The judgment and order appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.