[Crim. No. 3931. First Dist., Div. One. Nov. 21, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. JERRY
PHILLIPS, Defendant and Appellant.

Robert S. Field, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

TOBRINER, J.—Appellant's twofold attack upon the judgment in the instant case may be disposed of briefly. Neither the contention that the prosecutor's questions as to possible gambling activities at appellant's home improperly exceeded the scope of cross-examination nor the argument that the court committed prejudicial error in permitting the district attorney to question appellant as to his two prior felony convictions will stand.

Accused of violation of section 12021 of the Penal Code (possession of certain firearms by felons) appellant, after a jury trial, suffered judgment of guilt. We set forth the factual account upon which the judgment rests.

When, on April 14, 1960, appellant called on Mae Etta Gaines he asked her to accompany him outside, and, when she refused, he took her hand and pulled her out of the house and into a car. He drove to the end of Chesley Street; a

scuffle ensued; appellant pulled out a pistol. Mae jumped out of the car; appellant pursued her. Appellant fired a shot at the ground "down behind" Mae's feet; he put her back in the car and drove away.

After appellant drove a short distance Mae saw a police car coming down the street. She jumped out of the car, ran over to the police car and told the officers that appellant had threatened her with a gun. Officer Ellison of the Richmond Police Department immediately ran to appellant's car. Officer Washington, who remained in the police car, saw appellant lean forward "as if he could have been putting something under the seat." Officer Ellison searched the person of appellant but found nothing. Upon the officer's request, appellant gave permission to search the car. Under the driver's seat the officer found a .32 caliber Colt Automatic Pistol with seven rounds in the magazine and one in the chamber. Although appellant initially denied knowing anything about the weapon, "[h]e finally said that the gun was his, and that he intended to plead guilty and get it over with."

At the Richmond Hall of Justice appellant told Sergeant Lott that he had received the pistol on the previous day from a man named Sam as security for a six-dollar loan. According to appellant Sam had reached inside the car and put the gun under the front seat, but appellant, until he had been placed under arrest, had forgotten about it. Sergeant Lott wrote the statement down and later read it to appellant; appellant stated that "that was exactly how it happened," but refused to sign the statement.

The defense presented testimony to the effect that Carl Martin, the owner of the Chevrolet, had lent his car earlier in the day to "Trouble" Smith in order that "Trouble" might take Mae Etta Gaines home; that "Trouble" and Mae stopped at Sam Mullen, Jr.'s house where Sam, who owned the pistol, gave it to "Trouble" as security for a six-dollar loan; that "Trouble" put the gun under the seat and had forgotten about it when he returned the car to Martin; that appellant, who borrowed Martin's car later that day, knew nothing about the pistol being under the seat; and that Mae told the police officer where he could find the weapon. Appellant also testified that he had made some false admissions to the police because he had been under the impression that the offense was punishable only by fine and because he knew that "Trouble" did not have any money with which to pay a fine.

162

 We turn to the first issue above set forth, which involves the prosecution questions on cross-examination. On direct examination to the question ''What is your occupation,'' appellant replied, ''I'm a laborer.'' On cross-examination, appellant admitted that he had not worked as a laborer for two years. Questioning appellant as to the source of his income for the period preceding his arrest, the prosecutor asked a series of questions as to the possibility that appellant's income had been derived from gambling activities. While counsel objected to this line of questioning, the judge ruled that the ''door had been opened'' by appellant's direct testimony on direct examination as to his occupation.

Despite appellant's contention that the court erred because the cross-examination exceeded a proper scope and because it allegedly introduced inadmissible evidence of an independent crime, we believe appellant's answers on direct examination justified the court in permitting the rebutting cross-examination as to appellant's assertion. Because as we shall show, the cases clearly sustain such scope of cross-examination, we see no reason to examine appellant's contention that the court erred on the above mentioned ground that the questions sought to procure testimony as to a different crime.

 That cross-examination may embrace questions which tend to rebut the testimony of a witness on his direct examination, even though it does not relate to the principal issue, has been stated in many cases. *People* v. *Dotson* (1956) 46 Cal.2d 891 [299 P.2d 875] specifically expresses this proposition. There defendant testified on direct examination that at the age of 17 he had been discharged from the Marine Corps. The district attorney's cross-examination adduced the fact that defendant had been dishonorably discharged, although a general discharge under honorable conditions had later been substituted for it. The dishonorable discharge did not relate to the principal issue of the guilt of defendant of the crimes charged, and on appeal he claimed that the questions constituted prejudicial misconduct. The Supreme Court stated: ''It is well established that the scope of proper cross-examination may extend to the whole transaction of which the witness has testified, or it may be employed to elicit any matter which may tend to overcome, qualify or explain the testimony given by a witness on his direct examination.'' (P. 898.)

Many recent cases follow *Dotson*. On parallel facts involving a question as to the cause of a discharge from the Marine Corps, we sustained in *People* v. *Stevens* (1960) 186 Cal.App. 2d 772 [9 Cal.Rptr. 217] the propriety of cross-examination as to the reasons for termination. Likewise in *People* v. *James* (1961) 193 Cal.App.2d 595, 599 [14 Cal.Rptr. 491], we concluded that the court properly permitted cross-examination of defendant as to his 1959 arrest with a wallet in his hand in a situation in which defendant himself asserted he had not so held a wallet since 1957. (To the same effect: *Behr* v. *County of Santa Cruz* (1959) 172 Cal.App.2d 697, 704 [342 P.2d 987].) In a similar case in which appellant testified on direct examination "that his presence in the rooming house was for the purpose of seeing his wife and two children who lived in the building," we sustained a question on cross-examination as to nonsupport of his wife. (*People* v. *Linyard* (1957) 151 Cal.App.2d 50, 56 [311 P.2d 57].)

While the questions in the instant case did not relate to the issue of the appellant's guilt, they did elicit information which would "overcome, qualify or explain" appellant's own testimony on direct examination. (*People* v. *Dotson, supra,* 46 Cal.2d 891, 898.) The prosecution could properly rebut appellant's assertion that he was a laborer and earned his living by that occupation; the district attorney could attempt in cross-examination to show that appellant's income did not derive from his work as a laborer but from other sources.

Appellant fails in his second contention that the court erred in allowing the district attorney to cross-examine him as to two prior felony convictions. He properly contends, however, that the district attorney exceeded the bounds of propriety in certain propounded questions; this error, however, as we shall point out, could not possibly have caused prejudice.

Appellant's prime contention that his admission of the prior felony convictions before trial precluded the district attorney from questioning him as to the convictions conflicts with the settled law of the state. As Justice Peters pointed out in *People* v. *Linyard, supra,* 151 Cal.App.2d 50: "While the most frequently used method of impeachment in case of a denial of the prior is by the introduction of the record of conviction (*People* v. *Williams,* 32 Cal.2d 78 [195 P.2d 393]), the prosecution has as an alternative a limited right to cross-examine on the prior convictions." (P. 55.)

■ The Supreme Court in *People* v. *Cobb* (1955) 45 Cal.2d 158 [287 P.2d 752] has likewise said " [a]lthough Penal Code, section 1025, provides that 'the charge of the previous conviction must not be read to the jury, nor alluded to on the trial,' the testimony of a defendant who has testified in his own behalf may be impeached, like that of any other witness, by proof that he has suffered prior convictions of felonies." (P. 162.)

■ Appellant's corollary argument that the cross-examination regarding such prior convictions must be "limited by the requirement that it . . . be conducted in good faith" cannot advance his position because, as *Linyard* points out, the requirement calls only for a bona fide precedent belief of the district attorney that defendant has in fact been convicted of a felony. (*People* v. *Linyard, supra,* 151 Cal.App.2d 50, 55.) No doubt could attach to that fact in the instant case since appellant here, before trial, admitted his prior convictions.

■ As we have previously stated, however, the district attorney did propose questions that were not to be condoned. Thus, at one point, in questioning appellant as to why he had changed his story, the prosecutor stated: "You didn't want to go back to the 'Big House,' did you?" Later, after appellant had testified that he wouldn't "stoop" to moving in with a woman on relief, the prosecutor stated: "You wouldn't? You would stoop to A D W and Robbery, Armed Robbery, is that it?" After the latter remark the court informed the prosecutor that if the matter were referred to again he would grant appellant's motion for a mistrial. The Attorney General concedes that the prosecutor "may have stepped over the line" in propounding some of his questions.

Despite the fact that the questions cannot be condoned and that the prosecutor exceeded the proper limitation of his role, we must conclude that the overwhelming evidence of guilt eradicates any possibility of prejudice. We cannot say that it is "reasonably probable that a result more favorable to the appealing party would have been reached" in the absence of the improper questions. (See *People* v. *Watson* (1956) 46 Cal.2d 818, 837 [299 P.2d 243].) The jury properly knew of the prior felony convictions and the prosecution's embellishment of details regarding them could not have affected the result of the trial.

We affirm the judgment.

Bray, P. J., and Sullivan, J., concurred.