[Crim. No. 14104. First Dist., Div. One. Dec. 29, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
INEZ GARCIA, Defendant and Appellant.

**COUNSEL**

Garry, Dreyfus, McTernan, Brotsky, Herndon & Pesonen, Charles R. Garry, Michael P. Goldstein, Cumings & Jordan and Susan B. Jordan for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and Patrick G. Golden, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**ELKINGTON, J.**—We find ourselves concerned, on this appeal by defendant Inez Garcia from a judgment of conviction of second degree murder, with a variant jury instruction on the concept of proof beyond a reasonable doubt.

As is well known, the principles of "presumption of innocence" and "proof beyond a reasonable doubt," applicable to prosecutions for crime, are defined by California's Penal Code section 1096, in this manner: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal, but the effect of this presumption is only to place upon the state the burden of proving him guilty beyond a reasonable doubt. Reasonable doubt is defined as follows: 'It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.' "

The language is derived from that written in 1850 by Chief Justice Shaw of Massachusetts, in *Commonwealth v. Webster,* 59 Mass. (5 Cush.) 295, 320. It has with near, if not complete, universality been accepted as the best definition of the concept of proof beyond a reasonable doubt. Well intentioned efforts to "clarify" and "explain" these criteria have had the result of creating confusion and uncertainty, and have repeatedly been struck down by the courts of review of this state.

We point out some examples of innovative "reasonable doubt" instructions which have been held erroneous.

*People* v. *Simpson,* 43 Cal.2d 553, 565 [275 P.2d 31]: Here the trial court properly instructed on reasonable doubt in the language of Penal Code section 1096. It then added the following: " 'The term "reasonable doubt," as used in these instructions, means a doubt which has *some good reason* for its existence *arising out of evidence in the case;* such doubt as you are able to find a *reason for in the evidence.* As applied to the evidence in criminal cases, it means an *actual and substantial doubt growing out of the unsatisfactory nature of the evidence* in the case. It does not mean a doubt which arises from some mere whim or vagary or from

any groundless surmise, suspicion or guess.' " (Fn. omitted.) The court found the italicized language to be improper, but in the context of the case nonprejudicial.

*People* v. *Smith,* 164 Cal. 451, 463 [129 P. 785]: "The court further instructed the jury as follows: 'A doubt to justify an acquittal must be reasonable, and it must arise from a candid and impartial investigation of all the evidence in the case. If, after considering all the evidence you can say that you have an abiding conviction of the truth of the charge, you are satisfied beyond a reasonable doubt.' " Pointing out that such instructions were "criticized and condemned" the court said, "It certainly does not better the long approved instruction of Chief Justice Shaw."

*People* v. *Maughs,* 149 Cal. 253, 261-262 [86 P. 187]: "The court instructed the jury as follows: 'For the purpose of this trial and before you had heard any evidence a presumption of the innocence of the accused arose. Independent of evidence he was presumed by you to be innocent. This presumption of innocence arising at the outset, attends him throughout the trial and until you have finally determined upon your verdict. You are not to forget it in weighing the testimony.' " Finding error, the court said, "Nothing can be gained and much may be sacrificed by such uncalled for departures from the plain letter of the statute [Pen. Code, § 1096], and from the oft-repeated and oft-approved language in construing it."

*People* v. *Huntington,* 138 Cal. 261, 262-263 [70 P. 284]: "Appellant contends that the following instruction was erroneous: . . . ' "Moral certainty" is described as a state of impression produced by facts in which a reasonable mind feels a sort of coercion or necessity to act in accordance with it.' In our opinion this instruction should not have been given."

*People* v. *Schoedde,* 126 Cal. 373, 376 [58 P. 859]: "The court gave the following instruction to the jury: 'If, after a careful and impartial consideration of all the evidence in the case, you can say and feel that you are morally convinced of the guilt of the defendant, and are fully satisfied of the truth of the charge, then you are convinced beyond a reasonable doubt, and your verdict should be one of conviction.' This instruction has some support in a few of the early decisions of this court, but it is not a perfectly sound legal instruction by any means, and should never be given. It is better by all means to define a reasonable doubt in

the way so often declared unobjectionable by this court, rather than attempt new departures."

*People* v. *Paulsell,* 115 Cal. 6, 6-7, 10 [46 P. 734]: "The instruction given to the jury by the court on the subject of reasonable doubt is as follows: 'As the exclusive arbiters of the facts, it is for you to say what has been proved and established to your satisfaction in this case, being minded that if that proof to your satisfaction shall make against the defendant, then it must be proof beyond all reasonable doubt and to a moral certainty. . . . Now, the reasonable doubt that you have heard me speak of means precisely what the words import: A fair doubt, growing out of the evidence in the case, based upon reason and common sense. It is such a doubt as may leave the minds of the jury, after considering all the evidence in the case, in that state that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge.' . . . [¶¶] The judgment must be reversed and a new trial ordered on account of instructions given and refused upon the subject of reasonable doubt—a subject upon which we had hoped there would be no further difficulty, . . ."

*People* v. *Bemmerly,* 87 Cal. 117, 120, 121 [25 P. 266]: "Instruction No. 10, given at the request of the prosecution, gives a lengthy definition of 'a reasonable doubt,' and contains this clause: 'It must not be one that is merely fanciful,—created ingeniously in your minds, to escape the consequences of an unpleasant verdict; it must be an honest doubt, —such a doubt as strikes the conscientious mind, and one that clouds the understanding of those who are honestly seeking to arrive at the truth; *such a doubt as would induce a man of reasonable firmness and judgment to act upon it in matters of importance to himself.*' . . . [W]e are bound to hold that so much of the instruction in this case as we have Italicized is erroneous."

Trial courts have often been admonished such as, "it would perhaps have been better practice" to have instructed only in the language of section 1096 (*People* v. *Simpson, supra,* 43 Cal.2d 553, 566), and to follow " 'the language of section 1096 [since failure] to do so is simply inviting error' " (*People* v. *Simms,* 144 Cal.App.2d 189, 199 [300 P.2d 898]; *People* v. *Castro,* 68 Cal.App.2d 491, 497 [157 P.2d 25]). "[M]ost of the instructions of courts on the old subject of reasonable doubt turn out to be erroneous when they ambitiously step outside of well-established bounds." (*People* v. *Lenon,* 79 Cal. 625, 629 [21 P. 967].) Addressing itself to the problem, the court in *People* v. *Paulsell, supra,* 115 Cal. 6, 10,

stated: "We have frequently held that where the well-known definition of reasonable doubt of Chief Justice Shaw in the Webster case had been given to the jury, we would be loth to reverse a judgment for the refusal of the court to give other instructions upon the subject; and we have frequently warned trial courts against departing to any considerable extent from that definition. In *People v. Chun Heong,* 86 Cal. 332 [24 P. 1021], the court, through Beatty, C. J., said: 'We cannot, however, abstain from again expressing the hope that the trial judges who have made use of this form of instruction will eventually see the propriety of returning to the approved definition, which, since the time of Chief Justice Shaw, has never been improved upon.' "

Indeed, it "was to eliminate such claims of error . . . that the legislature enacted Penal Code, section 1096a" (*People v. Simms, supra,* 144 Cal.App.2d 189, 199), which reads, "In charging a jury, the court may read to the jury section 1096 of this code, and no further instruction on the subject of the presumption of innocence or defining reasonable doubt need be given."

Other jurisdictions have spoken on the subject. *State v. Morrison,* 67 Kan. 144 [72 P. 554, 559]: "As has been often said by this court, the term 'reasonable doubt' best defines itself. All attempts at definition are likely to prove confusing and dangerous." *State v. Robinson,* 117 Mo. 649 [23 S.W. 1066, 1069]: "Every attempt to explain [the definition of reasonable doubt] renders an explanation of the explanation necessary." *People v. Rogers,* 324 Ill. 224 [154 N.E. 909, 913]: "It is in a term which needs no definition, and it is erroneous to give instructions resulting in an elaboration of it." *State v. Davis,* 48 Kan. 1 [28 P. 1092, 1096]: "[G]enerally, the attempted definitions of [reasonable doubt] by courts or others are simply misleading and confusing, and not proper explanations of their meaning at all." *Mickey v. Commonwealth,* 72 Ky. (9 Bush) 593, 598: "As it is difficult, if not impossible, to give a precise and intelligible definition of what a reasonable doubt is, without extending an instruction into almost a treatise upon the subject, it seems to this court that the better practice is to follow as nearly as practicable the language of the Criminal Code, which is certainly as intelligible and as easily comprehended as the definition given in this case."

Insofar as we have been able to determine there has been, in this state, but one *authoritative* departure from the strict language of section 1096. Chief Justice Traynor, writing for the court in *People v. Hall,* 62 Cal.2d 104, 112 [41 Cal.Rptr. 284, 396 P.2d 700], elaborated upon the principle.

He declared: *"To justify a criminal conviction, the trier of fact must be reasonably persuaded to a near certainty."* (Italics added.) This concept of reasonable persuasion "to a near certainty" is now a necessarily implied element of section 1096's definition. (See *People* v. *Reyes*, 12 Cal.3d 486, 500 [116 Cal.Rptr. 217, 526 P.2d 225]; *People* v. *Redmond*, 71 Cal.2d 745, 756 [79 Cal.Rptr. 529, 457 P.2d 321]; *People* v. *Wade*, 15 Cal.App.3d 16, 26 [92 Cal.Rptr. 750] [cert. den., 405 U.S. 925 (30 L.Ed.2d 797, 92 S.Ct. 972)]; *People* v. *Hughes*, 268 Cal.App.2d 796, 801 [74 Cal.Rptr. 107]; *People* v. *Turner*, 267 Cal.App.2d 440, 443 [73 Cal.Rptr. 263, 38 A.L.R.3d 940].) It creates no new standard; it only more sharply defines that of section 1096. (See *People* v. *Williams*, 10 Cal.App.3d 638, 644 [89 Cal.Rptr. 143], and see the authority there collected.)

It is now firmly, and universally, held that: "The due process clause of the Fourteenth Amendment to the federal Constitution protects the accused against conviction except upon proof beyond a reasonable doubt." (*People* v. *Serrato*, 9 Cal.3d 753, 766-767 [109 Cal.Rptr. 65, 512 P.2d 289]; and see *People* v. *Coleman*, 13 Cal.3d 867, 875 [120 Cal.Rptr. 384, 533 P.2d 1024]; *People* v. *Vann*, 12 Cal.3d 220, 227 [115 Cal.Rptr. 352, 524 P.2d 824].) The United States Supreme Court in *In re Winship*, 397 U.S. 358, 364 [25 L.Ed.2d 368, 375, 90 S.Ct. 1068], has stated: "[U]se of the reasonable-doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law. It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned. It is also important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty."

The principle at issue, being essential to a fair trial and grounded in the state and federal constitutional guaranties of due process, must be accorded at least equal dignity with other constitutional rights due the criminally accused; indeed, many believe it entitled to an even higher level of respect than such constitutional precepts, unrelated to the integrity of the guilt finding process, as are declared in *Mapp* v. *Ohio*, 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933], and *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. Unlike the holdings of those cases, it is calculated to safeguard the accused "from dubious and unjust convictions" (see *In re Winship, supra,*

397 U.S. 358, 362 [25 L.Ed.2d 368, 374]), and to lessen the "risk of convicting an innocent person" (cf. *In re Sterling*, 63 Cal.2d 486, 487 [47 Cal.Rptr. 205, 407 P.2d 5]).

Defendant Inez Garcia was charged with murder, and she admitted committing the act of homicide. We need not here attempt to summarize the voluminous record. It is sufficient to note that the trial court properly concluded that the evidence was such as would, depending upon the factual version found true by the jury, justify any of the several verdicts that they were permitted to reach. Those permissible verdicts were: (1) Not guilty, on the theories of excusable homicide or unconsciousness of the homicidal act; (2) guilty of voluntary manslaughter; (3) guilty of involuntary manslaughter; (4) guilty of murder, second degree; and (5) guilty of murder, first degree.

At the conclusion of the evidence the jury were properly instructed on the principle of proof beyond a reasonable doubt according to Penal Code section 1096. (See *ante*, p. 63.)

The trial court then amplified that instruction in the following language: "In other words, reasonable doubt means just what the term implies, doubt based upon reason, doubt that presents itself in the minds of reasonable people who are weighing the evidence in the scales, one side against the other, in a logical manner in an effort to determine wherein lies the truth."*

This supplemental instruction purported to *explain* the meaning of the previously given language of section 1096. Although that language had spoken in terms of "reasonable doubt," and "presumption of innocence" and the need for " 'an abiding conviction, to a moral certainty, of the truth of the charge,' " the jury were told that it meant no more than a doubt which presented itself to them after "weighing the evidence in the scales, one side against the other, in a logical manner in an effort to determine wherein lies the truth."

---

*This language was apparently taken from *People* v. *Rodgers*, 38 Cal.App.2d 360, 364 [101 P.2d 157], an opinion responding negatively to an application for supersedeas pending appeal. The court, without discussion or consideration of authority (see 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 697-698, pp. 4614-4615), found nothing in the instruction "to justify the complaint appellant makes against it." No hearing was sought, or granted, by the Supreme Court (see 6 Witkin, *op.cit.*, § 700, p. 4617), and the instruction, except for the case before us, appears to have never since been followed, or otherwise considered. The case is of doubtful precedential value.

This final explanatory instruction is strikingly comparable to the civil case rule of " 'preponderance of evidence' [by which] is meant such evidence as, *when weighed with that opposed to it,* has more convincing force, and from which it results that the greater probability" (italics added) of truth lies therein. (*People* v. *Miller,* 171 Cal. 649, 653 [154 P. 468]; *In re Corey,* 230 Cal.App.2d 813, 823 [41 Cal.Rptr. 379]; see also *Lawrence* v. *Goodwill,* 44 Cal.App. 440, 451-452 [186 P. 781]; BAJI (5th ed. 1969) No. 2.60; Witkin, Cal. Evidence (2d ed. 1966) § 208, pp. 189-190.) It calls upon the jury to *weigh* "the evidence in the scales ... in an effort to determine wherein lies the truth," and thus the guilt or innocence of the accused. ■ This "weighing" process, where a tipping of the scales determines the "truth," is wholly foreign to the concept of proof beyond a reasonable doubt.

The distinction was made clear by California's Supreme Court. "[I]n civil cases a party may have established an essential fact by a preponderance of the evidence, although, in the light of all the evidence *pro* and *con,* the jury may not be satisfied to a *moral certainty* of the existence of the fact, and the *whole* evidence may not be such as to produce conviction in their minds." (*People* v. *Miller, supra,* 171 Cal. 649, 654.) It is recognized throughout the nation, for instance: "The distinction between 'beyond reasonable doubt' in a criminal case and a 'fair preponderance of the evidence' in a civil case has always been recognized in Indiana jurisprudence. The two are wholly different, clearly recognize distinguishable degrees of burdens of proof and, of course, the duty of establishing a fact 'beyond reasonable doubt' imposes a duty far greater than to establish the same fact by 'a fair preponderance'." (*Kempf* v. *Himsel,* 121 Ind.App. 488 [98 N.E.2d 200, 212].)

In any event the criticized instructional language was calculated to divert the jury, in some degree, from their constitutionally prescribed duty not to find guilt unless they "be reasonably persuaded to a near certainty." (See *People* v. *Reyes, supra,* 12 Cal.3d 486, 500.) It was, as contended by defendant, a "watering down" of that fundamental principle, a practice decried by *In re Winship, supra,* 397 U.S. 358, 364 [25 L.Ed.2d 368, 375], where it was said: "It is critical that the moral force of the criminal law *not be diluted* by a standard of proof that leaves people in doubt whether innocent men are being condemned." (Italics added.)

For these several reasons we hold that the trial court's supplemental instruction, explaining Penal Code section 1096's definition of proof beyond a reasonable doubt, was erroneously given the jury.

There remains for our consideration the question whether the error was harmless. ■ The point being of constitutional dimension, before the error can be held harmless "the court must be able to declare a belief that it was harmless beyond a reasonable doubt." (*Chapman* v. *California*, 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

It seems proper at this point to emphasize that the erroneous instruction purported to *explain the meaning* of the earlier instruction on reasonable doubt in the language of Penal Code section 1096. It was the last definitive instruction on the subject given by the court, and therefore must reasonably be deemed to have been uppermost in the minds of the jury during their deliberations.

From the instructions given by the trial court, it appears that there was some evidence that Inez Garcia had acted with a lack of "malice" or under "heat of passion" without sufficient provocation, or under "diminished capacity" caused by voluntary intoxication. Such evidence, if found true by the jury, would have called for a verdict of guilty of the lesser crime of manslaughter. Other evidence that she was not "conscious" of the homicidal act, or that she acted in "self-defense" would, if found true by the jury, have required a verdict of not guilty.

Among others, the trial court read to the jury the following instructions:

"If you are satisfied beyond a reasonable doubt that the killing was unlawful, but you have a reasonable doubt whether the crime is murder or manslaughter, you must give the defendant the benefit of such doubt and find it to be manslaughter rather than murder.

"If from all the evidence you have a reasonable doubt whether defendant was capable of forming such specific intent or mental state [concerning intent to kill], you must give that defendant the benefit of that doubt and find that [s]he did not have such specific intent or mental state.

"Where a person commits an act without being conscious thereof, such act is not criminal even though, if committed by a person who was conscious, it would be a crime."

In relation to these, and other, instructions the jury were presumably applying the erroneous reasonable doubt concept as instructed by the

trial court. We ourselves are unable to declare, *beyond a reasonable doubt* (see *Chapman* v. *California, supra,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711], that had the jury applied the correct evidentiary criteria to the factual issues submitted to them, a verdict more favorable to defendant would not have been reached. The instructional error of the trial court was accordingly not harmless, and the judgment must be reversed.

We need not consider other assignments of error relied upon by defendant, since the circumstances out of which they arose will probably not recur at the next trial.

The judgment is reversed. An appeal from nonappealable "other orders" is dismissed.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied January 28, 1976. Sims, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied February 26, 1976.