Filed 7/19/13  P. v. Williams CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LEROY A. WILLIAMS,<br><br>    Defendant and Appellant. | B242759<br><br>(Los Angeles County<br>Super. Ct. No. MA 051525) |

APPEAL from a judgment of the Superior Court of Los Angeles County, John Murphy, Judge.  Affirmed.

David L. Polsky, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Appellant Leroy A. Williams challenges his conviction for three counts of first degree robbery and one count of attempted first degree robbery, arguing the trial court's elaboration on the prosecution's burden of proof during jury selection lessened that burden in violation of his constitutional right to due process. We disagree and affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

A second amended information charged appellant with three counts of first degree residential robbery (Pen. Code, § 211)[1] and one count of attempted first degree robbery (§§ 211, 664) and alleged appellant had used and discharged a firearm during the commission of the offenses (§ 12022.53, subds. (b) & (c)). Appellant pleaded not guilty and denied the allegations. After trial, a jury convicted appellant on all counts and found the firearm use allegation true, but found the firearm discharge allegation untrue. Appellant was sentenced to a total state prison term of 26 years 4 months, and was assessed restitution, and various fines, fees, and custody and conduct credits not at issue in this appeal. He timely appealed.

As demonstrated at trial, in January 2011, Janet Rideaux, her adult son Richard Gardner, and a friend, Marcus Anderson, lived in a two-story apartment in a four-unit apartment complex in Lancaster. Rideaux was the manager at the time. Around noon on January 8, all three residents were home, along with a family friend, Fred Bussey, when appellant and a taller man, both with backpacks, knocked on the door. Bussey was with Gardner in Gardner's upstairs bedroom; Rideaux was upstairs in her bedroom; and Anderson was downstairs on a computer. Rideaux came down and answered the door, and the taller man asked for a rental application. She let the men in, went upstairs and knocked on Gardner's bedroom door to see if he had any applications; she was also on the telephone. By the time Gardner opened his bedroom door, the two men had come upstairs with Anderson; they had guns and demanded money. Appellant put his gun to either Anderson's or Rideaux's head.

---

[1] Undesignated statutory citations are to the Penal Code.

One of the men ordered the occupants on the floor in Gardner's bedroom and the taller one took Rideaux's phone and told her to lie on the bed. He repeatedly asked for "the money" and threatened to shoot one of them, at which point Gardner told them there was money in another bedroom. Rideaux testified the taller man hit Gardner in the back of the head with his gun, while Bussey and Gardner testified appellant hit Anderson in the head with his gun. Rideaux did not see if appellant had a gun. After taking Gardner's cell phone and house phone, appellant took Rideaux into her bedroom, where he took a small backpack containing $950 in cash and Rideaux's driver's license and bank card.

Rideaux returned to the bedroom with the rest of the occupants, although the testimony was conflicting on whether appellant also returned. Two shots were fired: one in Gardner's bedroom, which hit the floor near Bussey's head, and one in the upstairs hallway.[2] The two men fled with Rideaux's backpack, and the taller one dropped Bussey's wallet and keys, which he had taken earlier. Bussey saw the men drive away with a third person in a Toyota Corolla. Rideaux called the police, but both Bussey and Anderson left before the police arrived.[3] Rideaux and Gardner provided descriptions of the men. Rideaux did not identify appellant from a six-pack photographic lineup, but Gardner and Bussey did.

In the defense case, appellant testified he did not participate in the robbery because he was staying with his godmother in Los Angeles from January 2 to February 1, at which point he returned to his mother's home in Lancaster. His godmother testified that, with the exception of some hours on January 14 or 15, appellant stayed in the house with her during that time and she specifically recalled him being at her home on January 8.

---

[2] The testimony from Rideaux, Bussey, and Gardner was inconsistent on the details surrounding the shots, such as who fired them, the order in which they were fired, and where the bullets ended up. Those details are not pertinent to this appeal so we need not discuss them further.

[3] Law enforcement officers were never able to locate Anderson and he did not testify at trial.

3

Appellant testified he did not know Rideaux or Gardner, although he knew of Gardner because someone had once obtained drugs from Gardner on appellant's behalf.[4]

During jury selection, the court stated as follows regarding the prosecution's burden of proof: "Now, I have explained to you that it is only the deputy D.A., Mr. Williams, that has the obligation to bring forth any evidence at all. And he has a standard that he has to meet. [¶] The example that I use is that I was reading a newspaper or magazine not long ago that was discussing the -- the -- five of the ten most reliable automobiles. And, in reading the article, I began to wonder, well, wonder what standard they are using here. How do you determine what the most reliable automobiles would be. [¶] And, as I read on, it became clear, the standard that they used were [*sic*] the -- the cars that had the least visits to the repair shop. In other words, the cars that were repaired less than any others. And then they listed the ten over a period of the last five years. So that's the standard they used to determine the reliability of cars. [¶] The standard Mr. Williams, the D.A., has to meet in this case is the standard of proof known as proof beyond a reasonable doubt. So he has to prove to you, if he can, that Mr. Williams is guilty of one or more of these crimes. And the standard he has to meet is a standard known as proof beyond a reasonable doubt. [¶] And I'm going to read it to you right now. This is the definition of that standard that he must reach."

With only slight variation, the court read portions of standard instructions defining reasonable doubt. Based on CALCRIM Nos. 103 and 220, the court instructed: "Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction -- abiding means continuing -- an abiding conviction that the charge or charges are true. The evidence need not eliminate all possible doubt because everything relating to human affairs, everything in life is open to some possible or imaginary doubt. [¶] In deciding whether the people have proved their case beyond a reasonable doubt, you must

---

[4]     Gardner had previously sold marijuana, had suffered a conviction for possession of marijuana for sale, and had stolen property. The morning of the shooting, he had smoked marijuana.

impartially, impartially compare and consider all the evidence that is to be received throughout this entire trial. And unless the evidence proves the defendant guilty by a standard of proof known as proof beyond a reasonable doubt, he is entitled to an acquittal, and you must find him not guilty." Based on CALJIC No. 2.90, the court instructed: "Reasonable doubt is not a mere possible doubt because everything in life is open to some possible or imaginary doubt. Reasonable doubt is that state of the case which after the entire comparison and consideration of all the evidence leaves the mind of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charges."

The court further elaborated: "What I want you to notice about those definitions I have given you is that there is no mention of a standard known as absolute certainty. There is nothing about that standard that requires 100 percent proof. There is nothing in that definition that speaks of beyond a shadow of a doubt or anything else you may have heard on television or read somewhere. That is the standard of proof, beyond a reasonable doubt. It does not require absolute certainty. [¶] And I do spend a given amount of time discussing what accused persons rights are, but it is crucial that you understand that it is both sides in a criminal case that are entitled to a fair trial. [¶] And, in that regard, the deputy district attorney, Mr. Williams, wants to be sure that you are not going to hold him to any higher standard than the standard of proof that I have defined for you, proof beyond a reasonable doubt."

Finally, the court read how "another court has defined" the standard: "Proof beyond a reasonable doubt is proof that leaves you firmly convinced that the defendant is guilty. It is not required that the government prove guilt beyond all possible doubt." The court wanted the jurors "to think about that standard of proof beyond a reasonable doubt. And if you are new to the jury system -- and most of you are -- it's a -- it's a definition and standard that you have to let sink in for a while. So that is the situation."

After the close of evidence and before deliberations, the court read CALCRIM No. 220, which repeated the definition of the burden of proof beyond a reasonable doubt.

In closing arguments, the prosecutor argued to the jury as follows:

5

"Now, I'm going to talk about the law. And I'm going to start with this phrase that we have heard a bunch in this case, beyond a reasonable doubt. That's the standard that I have to meet to prove that a charge has been proved. I can tell you what it is based on the jury instruction. It's an abiding conviction that the charge is true. But it doesn't have to eliminate all possible doubt. That's what it is.

"I have done a lot of trials. And I have talked to a lot of jurors after trials. And most of them tell me that is not very helpful. I don't really necessarily understand exactly what that means.

"The courts -- the Supreme Court have told prosecutors we have to be very careful when we try and explain what beyond a reasonable doubt is and that we really should not stray away from what is written in the instructions. So I'm not going to.

"But I will tell you what it isn't. It is not proof beyond any doubt or proof beyond all doubt or proof beyond a shadow of a doubt. Everything in life is open to some doubt, some possibility that maybe something else happened. That's true of everything. I don't have to prove it couldn't possibly be any other way. What I have to prove is this is the only reasonable explanation, the only reasonable explanation that fits all of the facts, all of the facts that you have heard in this trial.

"And when I say it fits all of the facts, that's a key part of this whole thing. And I'll tell you the way I usually explain it to people.

"When I was little – I have a little brother. And we used to play this game called what is it, kind of like twenty questions, where I think of something and I start giving him clues, and we see how quickly he can figure out what it is.

"So I want you guys to play what is it for a second. I'm thinking of something. And I tell you it's an animal. It's gray. It has big ears, a long nose, tusks. It weighs a ton. It loves peanuts, and you can see it in the circus.

"At some point on this list, every one of you knows what I'm thinking of. All right. I'm thinking of an elephant.

"And some of you maybe got it after three or four clues. And some of you maybe got it after six or seven clues. But everybody got it.

6

"There is only one answer that fits all those clues. That's the way beyond a reasonable doubt works. There has to be only one reasonable answer that fits all this evidence.

"But all the evidence, because if I'm a defense attorney playing what is it, I'm going to want to pick these apart and say, well, look. An animal that's gray, I mean that could be a mouse. Right? Or an animal that has a long nose, well, that could be an anteater. Or, you know, an animal you see in the circus, that could be a lion. Right?

"If you only had one of these pieces of information, or two, who knows? But if you have all of them, there is only one answer that fits, and that's an elephant.

"And it's the same way with criminal cases. If all I had was there was a robbery that happened and somebody said, yeah, it was a male Black, 5-foot, eight, 160 pounds, we wouldn't be here. Right? One thing alone doesn't do it. But all of those things together, the descriptions that were given of all these people, the fact he was picked out of six-packs by different people, all of these people came into court and without any hesitation said, oh, no, that's him, that's definitely him, all of those things together show proof beyond a reasonable doubt. There is only one explanation, and that's that it was him."

## DISCUSSION

Appellant argues the trial court's elaboration on the prosecution's burden of proof during jury selection lessened that burden in violation of his due process rights.[5] He raises five points: (1) the court's automobile example prompted jurors to improperly "rank" the parties' versions of events in derogation of the reasonable doubt standard; (2) the court overemphasized that the prosecution need not prove appellant's guilt with "absolute certainty"; (3) the court's alternative definition using the phrase "firmly convinced" equated the standard of proof to "clear and convincing" evidence; (4) taken

---

[5]     Contrary to the Attorney General's argument, appellant did not forfeit his challenge to the trial court's comments by failing to object because the error implicates his substantial rights. (See Pen. Code, § 1259; *People v. Johnson* (2004) 119 Cal.App.4th 976, 984 (*Johnson*).)

cumulatively, the errors lowered the burden of proof to "clear and convincing" evidence; and (5) the prosecutor's comments during closing argument contributed to the errors.

Although the court would have been better served avoiding the commentary appellant now challenges (see *Johnson, supra*, 119 Cal.App.4th at pp. 985-986), we reject appellant's arguments that the court erred. Because we find no error, there was no cumulative error. The prosecution's comments during closing arguments also had no impact on the jury's understanding of the proper standard in this case.[6]

"Under the due process clauses of the Fifth and Fourteenth Amendments, the prosecution must prove a defendant's guilt of a criminal offense beyond a reasonable doubt, and a trial court must so inform the jury." (*People v. Aranda* (2012) 55 Cal.4th 342, 356 (*Aranda*), citing *Victor v. Nebraska* (1994) 511 U.S. 1, 5 (*Victor*) & *In re Winship* (1970) 397 U.S. 358, 364.) In assessing challenges to jury instructions on the burden of proof, we must determine "whether there is a reasonable likelihood that the jury understood the instructions to allow [a] conviction based on proof insufficient to meet" the beyond a reasonable doubt standard. (*Victor, supra*, at p. 6.)[7]

At the outset, we note that the challenged comments by the court occurred during jury selection, and its "'comments "were not intended to be, and were not, a substitute for full instructions at the end of the trial."'" (*People v. Avila* (2009) 46 Cal.4th 680, 716 (*Avila*).) The court properly instructed the jury on the burden of proof beyond a reasonable doubt at the close of evidence, which came 13 days after the court's comments during voir dire. That mitigated any potential problems created by the court's comments during jury selection. (*People v. Claxton* (1982) 129 Cal.App.3d 638, 669 (*Claxton*) [finding trial court's elaboration on burden of proof during voir dire was not

---

**6**     Appellant concedes he forfeited a separate claim of prosecutorial misconduct by not objecting in the trial court. (*People v. Crew* (2003) 31 Cal.4th 822, 839.)

**7**     Although we need not reach the issue, the parties agree if we find error, it is structural and not subject to harmless error review. (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 281-282; *Aranda, supra*, 55 Cal.4th at p. 365.)

erroneous because court properly instructed jury after nine days of trial], disapproved on other grounds by *People v. Fuentes* (1998) 61 Cal.App.4th 956, 969, fn. 12.)

Taking the automobile example first, there was no reasonable likelihood jurors would have interpreted the court's comments as defining the reasonable doubt standard, let alone that they must "rank" the parties' versions of events and choose which of the two is more believable. The court was obviously attempting to explain to the jury the concept of a "standard"; the example in no way purported to define the standard of proof to be applied in this case. In fact, in the very next sentence, the court explained the prosecutor's standard of proof was beyond a reasonable doubt. *People v. Garcia* (1975) 54 Cal.App.3d 61 (*Garcia*), cited by appellant, is therefore distinguishable. First, *Garcia* involved a jury instruction given to the jury at the close of evidence, not during jury selection. (*Id.* at p. 68.) Second, in *Garcia*, the court invalidated an instruction, given alongside proper instructions, that defined reasonable doubt as "'doubt that presents itself in the minds of reasonable people who are weighing the evidence in the scales, one side against the other, in a logical manner in an effort to determine wherein lies the truth,'" which the court viewed as imposing no more than a preponderance of the evidence standard. (*Ibid.*) Here, prospective jurors would not have understood the court's example as calling for a standard less than proof beyond a reasonable doubt.

We also think there was no reasonable likelihood jurors interpreted the court's explanation of the "absolute certainty" concept to lessen the prosecution's burden of proof. The court's comments were substantively correct. (See, e.g., *People v. Cash* (2002) 28 Cal.4th 703, 740-741 [approving of instruction that standard does not require a "'degree of proof which, excluding *all possibility of error*, produces absolute certainty'"]; *People v. Andrews* (1965) 234 Cal.App.2d 69, 76-77 ["Even the rigid requirement of the reasonable doubt rule stops short of absolute certainty . . . ."].) Paraphrasing or elaborating on the standard jury instruction on reasonable doubt can be dangerous. (See, e.g., *Johnson, supra*, 119 Cal.App.4th at p. 985; *Garcia, supra*, 54 Cal.App.3d at pp. 63-65 ["Well intentioned efforts to 'clarify' and 'explain' [accepted instructions] have had the result of creating confusion and uncertainty, and have repeatedly been struck down by

the courts of review of this state."].)  However, the court's comments came during jury selection as the court was attempting to determine if prospective jurors were qualified to serve.  A juror is not qualified if he or she will not follow the law, and it is a common daily practice for the court and trial counsel to ask jurors whether they will follow the reasonable doubt instruction.

This case is readily distinguishable from the cases finding error in a trial court's discussion of the reasonable doubt standard during jury selection.  In *Johnson*, for example, the trial court questioned prospective jurors at length on their understanding of the reasonable doubt standard and, in the process, equated proof beyond a reasonable doubt to everyday decisionmaking and even went so far as to tell prospective jurors they were "brain dead" if they believed they could be convinced of the defendant's guilt beyond all doubt.  (*Johnson, supra*, 119 Cal.App.4th at p. 980.)  The prosecutor also emphasized these comments in closing arguments.  (*Id.* at p. 983.)  The court held the trial court's "tinkering" with the statutory definition of reasonable doubt, "no matter how well intentioned," lowered the prosecution's burden of proof.  (*Id.* at p. 985.)  Similarly, in *People v. Johnson* (2004) 115 Cal.App.4th 1169, 1171-1172, the court found error in the trial court's comments during jury selection equating the decision to convict with a decision to take a vacation or get on an airplane.

The trial court's comments in this case are much more similar to the comments found permissible in *Claxton*, in which the trial judge explained the reasonable doubt standard during jury selection as "'you are in there in deliberations and you have a doubt. Well, you take it out here -- it is a mental trick, but you can do it -- and see if it is based on reason.  You are discussing the evidence and thinking about the evidence.  If it is based on reason it is a reasonable doubt; if it is just some weird doubt it is not a reasonable doubt, in fact it is an unreasonable doubt and you should reject it.  That's all it amounts to.  It is a heavier burden than in civil law but it is not an impossible burden. The [People] don't have to prove their case beyond all possible doubt.  It is just beyond a reasonable doubt, a doubt based on reason.'"  (*Claxton, supra*, 129 Cal.App.3d at p. 668.) The court also emphasized the comments were unlike those in *Garcia* because they came

10

during voir dire, not at the close of evidence just before the jury began deliberating. (*Id.* at p. 669.)

Here, as in *Claxton*, the court's comments were brief, made in passing during jury selection alongside a reading of the complete definitions in the standard instructions, and did not equate the decision to convict to everyday decisionmaking or otherwise misstate the standard. And the court instructed on the standard definition before deliberations. Jurors would not have reasonably interpreted the court's brief additional comments on absolute certainty during jury selection as reducing the burden of proof or requiring them to "err in favor of the prosecutor," as appellant contends.[8]

Further, there was no reasonable likelihood jurors would have interpreted the court's additional definition incorporating the "firmly convinced" standard as lowering the burden of proof to "clear and convincing" evidence in the context of this case. Our high court and the United States Supreme Court have approved the use of "abiding conviction" to define proof beyond a reasonable doubt. (*Victor, supra*, 511 U.S. at pp. 14-15 ["An instruction cast in terms on an abiding conviction as to guilt, without reference to moral certainty, correctly states the government's burden of proof."]; *People v. Freeman* (1994) 8 Cal.4th 450, 503-504 & fn. 9 (*Freeman*); see also § 1096 [defining reasonable doubt using "abiding conviction" phrase]; *People v. Stone* (2008) 160 Cal.App.4th 323, 334 [collecting cases since *Freeman* rejecting challenges to "abiding conviction" phrase].) We note courts in other jurisdictions have approved the use of the phrase "firmly convinced" to define proof beyond a reasonable doubt. (See, e.g., *U.S. v.*

---

[8] We find *People v. Lyons* (1956) 47 Cal.2d 311, cited by appellant, distinguishable. Under the unique facts in *Lyons*, the court held that a handwritten notation to a cautionary instruction improperly emphasized the point set forth because "the words were wholly unnecessary to a fair and clear statement of the pertinent proposition of law and were supererogated in the handwriting of the judge on the already adequate printed instruction which was taken into the jury room." (*Id.* at pp. 322-324; cf. *People v. Scarborough* (1959) 171 Cal.App.2d 186 [interpreting *Lyons* narrowly based on its facts].) Unlike in *Lyons*, the court's brief comments here were made during jury selection in the midst of the standard instructions and the court properly instructed the jury before deliberations without elaboration, ameliorating the risk of overemphasis.

11

*Velasquez* (9th Cir. 1992) 980 F.2d 1275, 1278 [rejecting argument that "firmly convinced" phrase equated standard with "clear and convincing" standard]; *State v. Jackson* (2007) 283 Conn. 111, 120-123 [collecting cases]; cf. *Victor, supra*, at pp. 26-27 (conc. opn. of Ginsburg, J.) [approving "clear, straightforward, and accurate" definition by Federal Judicial Center that includes two references to the "firmly convinced" phrase].)

We need not decide here whether the "firmly convinced" definition, on its own, would satisfy due process. The trial court read that definition along with the "abiding conviction" definition in the standard instructions, and, in context, we see no reason why jurors would have interpreted the phrase "firmly convinced" to mean anything less than the proper "abiding conviction" standard. The first definition was adequate without the second definition (which has not been approved by our Supreme Court), and we cannot say prospective jurors reasonably understood the phrase "firmly convinced" as lowering the prosecution's burden of proof.

Finally, the prosecutor's comments in closing did not contribute to any erroneous understanding of the reasonable doubt standard in the minds of jurors. The court's instructions on reasonable doubt were correct and, at the close of evidence, jurors were instructed if they believed the attorneys' comments on the law conflicted with the court's instructions, they must follow the court's instructions, which we presume they did. (*Avila, supra*, 46 Cal.4th at p. 719.) The prosecutor repeated the proper definition given by the court, although it was unnecessary for him to comment that the reasonable doubt definition was "not very helpful." He also probably should have avoided the elephant analogy, given that courts have found similar analogies can reduce the prosecutor's burden of proof and constitute prosecutorial misconduct (a claim not raised here). (See, e.g., *People v. Katzenberger* (2009) 178 Cal.App.4th 1260, 1266-1268 [finding error in the prosecutor's argument that proof beyond a reasonable doubt was like having six of eight pieces of a picture of the Statue of Liberty because the image was almost immediately recognizable and the six pieces improperly quantified the reasonable doubt standard as 75 percent certainty].) But while the prosecutor told the jury they may have

12

identified the object as an elephant before he gave them all the clues, he argued, "There is only one answer that fits all those clues. That's the way beyond a reasonable doubt works. There has to be only one reasonable answer that fits all this evidence." In other words, he used the elephant analogy to argue the jury must reach a conclusion based on all the facts, which did not lower the burden of proof.[9]

Trial judges should limit themselves to the standard instructions on reasonable doubt because "varying from the standard is a 'perilous exercise.'" (*Freeman, supra,* 8 Cal.4th at p. 504; see also *Garcia, supra*, 54 Cal.App.3d at pp. 64-66 [discussing unsuccessful departures].) In this case, however, we find no reasonable likelihood the jury would have interpreted the court's comments as lowering the burden of proof beyond a reasonable doubt.

## DISPOSITION

The judgment is affirmed.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.

---

**9**     In rebuttal, the prosecutor used President Obama as an example on the issue of eyewitness identifications. Appellant argues this also lowered the burden of proof, but we disagree. The prosecutor did not mention the burden of proof in rebuttal and the jury would not have understood the prosecutor's argument in that way.