Filed 8/26/13  P. v. Vera CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G047014 |
| v. | (Super. Ct. No. 10WF2527) |
| ANASTACIO VERA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Richard W. Stanford, Jr. and James Edward Rogan, Judges.  Reversed and remanded.

Ron Boyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia, Lynne McGinnis, Felicity Senoski and Julianne Reizen Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Anastacio Vera was convicted of three counts of lewd acts upon a child under age 14 (Pen. Code, § 288, subd. (a)), one count of forcible lewd acts upon a child under age 14 (Pen. Code, § 288, subd. (b)(1)), and one count of sodomy with a minor under age 14 (Pen. Code, § 286, subd. (c)(1)). On appeal, he argues that his due process rights were violated when the court repeatedly made comments to the jury that diminished the presumption of innocence and suggested the burden of proof was something other than proof beyond a reasonable doubt. We agree and reverse the judgment.

I

FACTS

*Testimony of Victim's Mother*

The mother of the 12-year-old victim, came home from the store to see the shadows of two people in the kitchen struggling, the defendant and her son. Defendant appeared to be nervous. She had a feeling something was not right. She asked her son what happened in the kitchen and he wouldn't tell her. The next day, she took him to the hospital to be checked by a doctor, and hospital personnel contacted the police.

*Testimony of Victim*

The victim testified he was doing his homework and defendant approached him and started touching him. When he was asked where defendant touched him, he responded, "in my butt," and said it was over his clothes. The victim pushed defendant's hand and went back to his homework.

A week later, the victim was once again doing his homework in the living room, and went to the kitchen for some water, when defendant did the same thing. Then defendant pulled the victim's hand toward defendant's bedroom. Defendant pulled him to the bed by the victim's shoulders and told him to pull his pants down. The victim testified: "I said 'no' and I was trying to get away, but he wouldn't let me go away."

Defendant pulled the boy's pants down and "then he put his down and then he started to put his front part in my back." At first, defendant touched the victim's buttocks and his penis.

The following questions and answers took place between the prosecutor and the victim:

"Q: His front part being his penis?

"A: Yes.

[¶] . . . [¶]

"Q: Did it go in all the way or a little bit?

[¶] . . . [¶]

"A: All the way.

"Q: So it went inside?

"A: Yes.

"Q: Did it hurt?

"A: Yes.

"Q: And did you tell him to stop?

"A: Yeah.

"Q: Did he stop?

"A: No."

Defendant was inside the victim for approximately 30 seconds when the victim managed to push him away. The prosecutor asked what happened when he pushed him away, and the victim answered: "I just — when I pushed him away he tried to stop me, but I — I just went back to the living room doing my homework."

The victim described the third occasion: "I was watching TV then I went to go — go get a drink of water. And then he just came up to me and he was touching me, but then he stopped because he heard my mom come in the door." The touching was on

3

his "butt" again.  The victim also said that defendant was pulling the victim's hand toward defendant's penis, which the victim touched for about five seconds.

*Court's Remarks to Jury[1]*

During jury selection, the court stated:

— "And then you decide whether the charges are proven sufficiently for you; if so, you vote guilty on the particular charge.  *If you believe that the charges were not sufficiently proven to you and you remain unconvinced*, then your duty according to the instructions, is to vote not guilty."

— "And so that's why we come down, after months and months of appearances in court and so forth, to a day like today where we actually have to have trial jurors listen to the evidence *and decide whether the charges are true or not . . . .*"

— "And, again, that's why we need jurors to listen to some testimony in evidence and decide *if the evidence is sufficient to convince you that the charges are true or not.*"

— "[T]here's one jury instruction that's in that packet that I'm required to read and it's an instruction on presumption of innocence, burden of proof.  *And it goes something like this*:  Basically it tells you that in every criminal case, including this criminal case, *the defendant is presumed to be innocent unless and until his guilt is actually shown by evidence during the course of the trial.*  And in a case where his guilt is not satisfactorily shown, he's entitled to an acquittal or a verdict of not guilty."

— "It goes on to state that this presumption then places on the prosecutor, . . . here, the burden of proving to you his guilt beyond a reasonable doubt.  And it even defines what is a reasonable doubt, *not very helpfully unfortunately*, but it defines it

---

[1]        All italics in court's quoted remarks are added.

as it's not a mere possible doubt, because, of course, everything in life is open to possible or imaginary doubt. But instead it's the kind of a case where after you heard all of the evidence it's left your mind in the kind of condition where you can't say you feel an abiding conviction of the truth of the charge. *Whatever that means.*"

— *"Now, that could mean a lot of different things to different people*. But there's a couple of things that I want to explain that I believe it means and find out if anybody needs to talk about it or thinks that that's a problem for you. [¶] *First of all, that presumption of innocence is what we call a procedural presumption, not a substantive presumption. I'm not telling you that the defendant is innocent. I'm telling you that that's the starting point of the trial. He's presumed innocent and remains so unless and until his guilt is shown by actual evidence.*"

— "Another thing about that is the definition of reasonable doubt could mean *different things to different people*, but in that sense it has been left up to you."

— "In other words, if the prosecutor presents evidence and witnesses *that convince you*, the jury instructions, rightfully so, tell you are supposed to vote guilty. But those same instructions tell you if the prosecutor *doesn't convince you,* doesn't bring in *sufficient evidence to convince you*, your duty is to vote not guilty."

— *"[I]f you believe it happened,* then you are supposed to vote guilty."

— "The issue is can you commit to following the *instruction if you are not convinced that you have to vote not guilty*."

— *"If you are convinced*, you have to vote guilty; if not, you are required to vote not guilty."

After the close of evidence, the court stated:

"I'll warn you, again, that remember when I started reading you the instructions at the beginning of the case? Those were the basic items and a lot of that is covered in the first portion of what I'll be reading to you."

5

*Court's Formal Concluding Instructions*

The court instructed the jury with CALCRIM Nos. 200 and 220. CALCRIM No. 200, as given in writing, provides in pertinent part as follows: "You must follow the law as I explain it to you, even if you disagree with it. . . ." "Some words or phrases used during this trial have legal meanings that are different from their meanings in everyday use. These words and phrases will be specifically defined in these instructions. Please be sure to listen carefully and follow the definitions that I give you . . . . [¶] . . . After you have decided what the facts are, follow the instructions that do apply to the facts as you find them."

CALCRIM No. 220, as given in writing, provides in pertinent part as follows: "A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt. [¶] Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. [¶] . . . Unless the evidence proves the defendant guilty beyond a reasonable doubt, he (is) entitled to an acquittal and you must find him not guilty."

In addition to providing these instructions to the jury in written form, the judge read them to the jury with only minor variations.

II

DISCUSSION

Defendant does not quibble with the court's written or oral instruction pursuant to CALCRIM Nos. 200 and 220. Rather, he asserts that the court violated his due process rights by making comments to the jury during voir dire that were confusing and diminished the burden of proof and presumption of innocence.

6

Penal Code section 1096 provides: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his or her guilt is satisfactorily shown, he or she is entitled to an acquittal, but the effect of this presumption is only to place upon the state the burden of proving him or her guilty beyond a reasonable doubt. Reasonable doubt is defined as follows: 'It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.'"

*Burden of Proof*

"'The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence—that bedrock "axiomatic and elementary" principle whose "enforcement lies at the foundation of the administration of our criminal law." [Citation.]' [Citation.] Due process 'protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he [or she] is charged.' [Citation.]" (*People v. Johnson* (2004) 119 Cal.App.4th 976, 978-979.)

In *People v. Johnson*, *supra*, 119 Cal.App.4th 976, "during jury selection the court amplified at length on the standard reasonable doubt instruction . . . ." (*Id.* at p. 979.) "The court authorized the prospective jurors to find [the defendant] guilty even if they were to have 'some doubt' about his guilt and characterized a juror who render[ed] a guilty verdict with 'no doubt' about his guilt as 'brain dead': 'So you've got to be convinced beyond a reasonable doubt, not beyond all possible doubt. [¶] . . . [I]f any of you think you can sit in a jury trial in a criminal case and render a guilty verdict and walk out of this courtroom feeling good about the verdict because there is absolutely no doubt

7

in your mind, it will not happen.  Even if you render a guilty verdict, there will be some doubt in your mind[s].  [¶] If there is no doubt in your mind, then I can tell you you were brain dead during the trial—you are brain dead.  That's not going to happen.'"  (*Id*. at p. 980.)  In addition, "[t]he court equated proof beyond a reasonable doubt to everyday decision-making in a juror's life . . . ."  (*Ibid.*)  In making his argument to the jury, the prosecutor emphasized the court's instructions, that any "juror who could return a guilty verdict without 'some doubt' about [the defendant's] guilt [was] 'brain dead,'" and that proof beyond a reasonable doubt was equivalent to everyday decision-making.  (*Id.* at p. 983.)  After the parties rested, the court gave the jury a standard instruction on proof beyond a reasonable doubt.  (*Id.* at p. 984.)

Notwithstanding the fact that the trial court gave a standard instruction before the jury deliberated, the appellate court held:  "[The trial] court's tinkering with the statutory definition of reasonable doubt, no matter how well intentioned, lowered the prosecution's burden of proof below the due process requirement of proof beyond a reasonable doubt.  [Citations.]  Lamentably, 'the essential connection to a "beyond a reasonable doubt" factual finding cannot be made where the instructional error consists of a misdescription of the burden of proof, which vitiates *all* the jury's findings.'  [Citation.] The error 'unquestionably qualifies as "structural error"'" and compels reversal per se. [Citations.]"  (*People v. Johnson*, *supra*, 119 Cal.App.4th at pp. 985-986.)

In *People v. Garcia* (1975) 54 Cal.App.3d 61, the appellate court, in discussing the definition of proof beyond a reasonable doubt, cautioned that "[w]ell intentioned efforts to 'clarify' and 'explain' these criteria have had the result of creating confusion and uncertainty, and have repeatedly been struck down by the courts of review of this state."  (*Id.* at p. 63.)  In *Garcia*, the trial court, at the conclusion of the evidence, properly instructed the jury on the standard of proof beyond a reasonable doubt as set forth in Penal Code section 1096.  However, it "then amplified that instruction [with] the following language:  'In other words, reasonable doubt means just what the term implies,

8

doubt based upon reason, doubt that presents itself in the minds of reasonable people who are weighing the evidence in the scales, one side against the other, in a logical manner in an effort to determine wherein lies the truth.'" (*Id.* at p. 68, fn. omitted.)

The appellate court in *People v. Garcia*, *supra*, 54 Cal.App.3d 61 held that the trial court erred in giving the supplemental instruction. (*Id.* at p. 69.) The appellate court stated: "This supplemental instruction purported to *explain* the meaning of the previously given language of section 1096. . . . [¶] This final explanatory instruction is strikingly comparable to the civil case rule of '"preponderance of evidence" [by which] is meant such evidence as, *when weighed with that opposed to it*, has more convincing force, and from which it results that the greater probability'. . . of truth lies therein. [Citations.]" (*Id.* at pp. 68-69.)

Here the court properly instructed the jury at the conclusion of the case as well, but only after reminding the jury not to forget what it said at the beginning. And the court's remarks during voir dire are quite troubling. Over and over the court gave shorthand versions of the correct statement of law. Compounding the problem was that, when the court did correctly state the law, it followed up with disparaging remarks such as stating the instructions were not very helpful. The court also made side comments, after giving correct statements of the law, such as "whatever that means" and "that could mean a lot of different things to different people."

*Presumption of Innocence*

"'The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.' [Citation.]" (*Taylor v. Kentucky* (1978) 436 U.S. 478, 483.) The presumption of innocence is preserved "up and until unanimous agreement is reached." (*People v. Goldberg* (1984) 161 Cal.App.3d 170, 190.)

"A jury instruction on the presumption of innocence is not constitutionally required in every case to satisfy due process, because such an instruction merely offers an additional safeguard beyond that provided by the constitutionally required instruction on reasonable doubt." (*Arizona v. Fulminante* (1991) 499 U.S. 279, 291.)  The United States Constitution requires that jury instructions convey "that the accused is presumed innocent until proved guilty." (*People v. Flores* (2007) 153 Cal.App.4th 1088, 1093.)  "[U]nder the United States Supreme Court's opinion in *Taylor v. Kentucky* [*supra*, 436 U.S. 478], the presumption-of-innocence instruction, which merely provides an additional safeguard against unjust convictions, is required only where the totality of the circumstances suggests that the defendant received a less than fair trial." (*People v. Beeson* (2002) 99 Cal.App.4th 1393, 1403, fn. omitted.)  Ordinarily "a defendant is accorded the presumption of innocence . . . with . . . CALCRIM 220." (*People v. Aranda* (2012) 55 Cal.4th 342, 354.)

Here the jury was given a variety of instructions regarding the presumption of innocence in addition to CALCRIM No. 220.  The jury was told by the court the defendant was presumed to be innocent as "the starting point of the trial" until guilt was shown by "evidence during the course of the trial" and until guilt was "shown by actual evidence."  Thus, the jury was given several options.  It could presume defendant to be innocent until:  1) he was proved guilty; 2) sometime after the trial starts; 3) his guilt was shown by evidence during the trial; or, 4) his guilt was shown by actual evidence.  The jury was also told the presumption of innocence is not substantive, an explanation which could easily lead to a conclusion that the presumption of innocence is neither meaningful nor important.

The court here attempted to explain the burden of proof and the presumption of innocence many times.  To a lay jury, the court's apparently extemporaneous statements had to be confusing.  At times, the court explained that the jury was simply to decide whether or not the charges were true, statements which

10

decreased the prosecutor's burden to prove defendant guilty beyond a reasonable doubt. With regards to the court's remarks seemingly disparaging the law by stating "whatever that means" and "that could mean a lot of different things to different people," at best the court was inviting the jurors to consider the law to be fluid and open to varying interpretations. Such statements were also suggestive that each juror was to make decisions based upon his or her personal predilections.

*Structural Error*

Structural errors are constitutional deprivations affecting the framework within which the trial proceeds. (*Arizona v. Fulminante*, *supra*, 499 U.S. at p. 310.) Whether there has been structural error is determined on a case-by-case basis. (*Neder v. U. S.* (1999) 527 U.S. 1, 14.) Structural errors defy analysis by harmless error standards. (*Id.* at p. 7.) Such errors warrant reversal without a showing of prejudice. (*U. S. v. Marcus* (2010) 560 U.S. 258 [130 S.Ct. 2159, 2162].)

The Attorney General argues the California Supreme Court recently held in *People v. Aranda*, *supra*, 55 Cal.4th 342, that failure to give a predeliberation reasonable doubt instruction with regard to one of the charges constituted error under both federal and state law, but was not reversible per se and was subject to review under *Chapman v. California* (1967) 386 U.S. 18.

The *Aranda* court explained that *Chapman* "established that federal constitutional errors are properly subject to review for harmlessness. In the nearly 50 years since *Chapman* was decided, the high court repeatedly has emphasized that most errors implicating a federal constitutional right, including most instructional errors, are amenable to harmless error analysis and that only a 'very limited class of cases' are subject to per se reversal. [Citations.]" (*People v. Aranda*, *supra*, 55 Cal.4th at p. 363.) The *Aranda* court went on to say that "the high court categorized constitutional errors into two groups. Most errors, the court explained, are "'trial error[s],'" occurring 'during

11

the presentation of the case to the jury.' [Citation.] They are amenable to harmless error review because they can be 'quantitatively assessed in the context of other evidence presented in order to determine whether [their] admission was harmless beyond a reasonable doubt.' [Citation.] 'Structural defects,' on the other hand, 'defy analysis by "harmless-error" standards' [citation] because they are not 'simply an error in the trial process,' but rather an error 'affecting the framework within which the trial proceeds' [citations]." (*Id.* at pp. 363-364.) Structural errors require automatic reversal because they infect the entire trial process. (*Id.* at p. 364.)

Following the holding in *Sullivan v. Louisiana* (1993) 508 U.S. 275, the California Supreme Court held that "giving of a constitutionally deficient *reasonable doubt instruction* can never be deemed harmless under a *Chapman* analysis." (*People v. Harris* (1994) 9 Cal.4th 407, 427.)

The law states that a presumption of innocence instruction merely offers an additional safeguard beyond the required reasonable doubt instruction. (*Arizona v. Fulminante*, *supra*, 499 U.S. at p. 291.) At the same time, the law also says the presumption of innocence standard is the bedrock and foundation of the administration of our criminal law, and due process "protects the accused against conviction except upon proof beyond a reasonable doubt." (*In re Winship* (1970) 397 U.S. 358, 364.) Thus, satisfactory instructions on the presumption of innocence depend upon satisfactory instructions on the burden of proof, and vice versa. Unfortunately the court provided unsatisfactory instructions for both underpinnings of our criminal justice system.

The court here attempted to explain the burden of proof and the presumption of innocence many times. To a lay jury, the court's apparently extemporaneous statements had to be confusing. At times, the court explained that the jury was simply to decide whether or not the charges were true, statements which decreased the prosecutor's burden to prove defendant guilty beyond a reasonable doubt. With regards to the court's remarks seemingly disparaging the law by stating "whatever

12

that means" and "that could mean a lot of different things to different people," at best the court was inviting the jurors to consider the law to be fluid and open to varying interpretations. Such statements were also suggestive that each juror was to make decisions based upon his or her personal predilections.

From reading the record, it is obvious the judge here was attempting to secure a jury ready and willing to follow the law. But in its zeal, the court paraphrased the law incorrectly and incompletely so often, that we must conclude the errors are structural and defy analysis by harmless error standards. Perhaps in attempting to make sure jurors felt comfortable in unfamiliar surroundings, the court spoke lightheartedly about the law, but while doing so, belittled and ridiculed concepts in our system of justice that are essential to due process and fairness. Under these circumstances, we must conclude defendant was denied due process and reverse.

### III

### DISPOSITION

The judgment is reversed and the matter is remanded to the trial court.


MOORE, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


ARONSON, J.


13