Filed 3/3/26  P. v. Martinez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C102346 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CR-FE-2020-0001889) |
| v. | |
| STEVEN ANDREW MARTINEZ, | |
| Defendant and Appellant. | |

This appeal follows defendant Steven Andrew Martinez's conviction for the brutal murder of M.S. and a related burglary with numerous enhancements for which he received a sentence that included a term of life without the possibility of parole (LWOP). He contends: (1) the trial court's definition of the term "abiding conviction" diluted the beyond a reasonable doubt standard of proof requiring reversal; (2) the four 5-year serious prior felony conviction enhancements imposed on the burglary count are unauthorized and must be stricken; (3) the abstract of judgment must be corrected to reflect the actual number of years associated with his prior serious felony enhancements; (4) the minute order and abstract of judgment must be correct to reflect the reduced fees

imposed by the trial court at sentencing; and (5) this court must strike the parole revocation restitution fine given defendant's LWOP sentence.

We will strike the parole revocation restitution fine, modify the judgment to reflect the correct court facilities and court operations assessment fees, and direct the trial court to file an amended abstract of judgment and associated minute order. We will otherwise affirm the judgment as modified.

### FACTS AND HISTORY OF THE PROCEEDINGS

The specifics concerning the murder and related burglary are not at issue in this case. It is sufficient to note that officers conducting a welfare check found the deceased victim M.S. laying on the floor of her home with her head wrapped in duct tape, hands and feet bound, and her pants down. An autopsy revealed the victim died from "multiple sharp force injuries" and had suffered over 25 stab wounds, 34 contusions, a severed ear, bite marks, and blunt force trauma to her buttocks so forceful that it liquified fat. Defendant's theft of the victim's truck as well as DNA evidence tied him to the crimes.

The People's August 2021 information charged defendant with the first-degree murder of M.S. (Pen. Code § 187, subd. (a); count 1; subsequent undesignated statutory references are to the Penal Code) and first-degree burglary (§ 459; count 2). The information further alleged special circumstances of torture murder (§ 190.2, subd. (a)(18)) and burglary murder (§ 190.2, subd. (a)(17)(G)). Finally, the information alleged as to both counts that defendant had suffered five prior strikes (§§ 667, subd. (d), 1170.12, subd. (b)) and five prior serious felony convictions (§ 667, subd. (a)). Defendant pleaded not guilty and denied all enhancements.

Defendant requested the trial court bifurcate the trial on his prior convictions, and the remaining allegations were tried to a jury. That jury found defendant guilty as charged and found true the torture murder and burglary murder special circumstances.

2

The trial court found defendant had suffered four prior strikes and four prior serious felony convictions.

The trial court sentenced defendant to LWOP for the first-degree murder with special circumstances plus four 5-year prior serious felony enhancements for a total term of LWOP plus 20 years. The court also sentenced defendant to 25 years to life for the burglary plus four 5-year prior serious felony enhancements, which the court stayed pursuant to section 654. Finally, the court imposed certain fines and fees that will be discussed in detail *infra*. Defendant timely appealed.

DISCUSSION

I

*The Jury Instructions*

Defendant argues the trial court committed instructional error violating his state and federal constitutional rights by "falsely defining an abiding conviction as a 'lasting conviction' " thus altering the beyond a reasonable doubt standard requiring reversal. Recognizing his failure to object below, he argues the court's error impacted his substantial rights, thereby excusing his lack of objection. (§ 1259.) To consider defendant's section 1259 argument, we must evaluate his claim on the merits. Having done so, we do not agree.

The Applicable Law

"California law imposes a duty on the trial court to instruct the jury in a criminal case on the presumption of innocence in favor of the defendant and the prosecution's burden of proving guilt beyond reasonable doubt." (*People v. Aranda* (2012) 55 Cal.4th 342, 352.) Section 1096 sets forth the prosecution's burden of proof in a criminal case and has been incorporated in the standard reasonable doubt instruction found in

3

CALCRIM No. 220. (*Aranda*, at p. 353.) The reading of CALCRIM No. 220 complies with the court's duty and no further instruction is needed. (*Aranda*, at pp. 353-354.)

Relatedly, "[t]he Due Process Clause requires the government to prove a criminal defendant's guilt beyond a reasonable doubt, and trial courts must avoid [instructing in such a way] so as to lead the jury to convict on a lesser showing than due process requires." (*Victor v. Nebraska* (1994) 511 U.S. 1, 22.) Where a court has misdefined the reasonable doubt standard in a manner that improperly lowers the prosecution's burden of proof, reversal is required. (*People v. Aranda*, *supra*, 55 Cal.4th at p. 365.) "An instruction that effectively lowers the prosecution's burden of proving guilt beyond a reasonable doubt is structural error because it 'vitiates all the jury's findings' and its effect on the verdict is 'necessarily unquantifiable and indeterminate.' " (*Ibid*., italics omitted.) But, not every error in defining reasonable doubt is structural; most are subject to harmless error review. (*Id*. at pp. 365-366.) To determine whether the error is structural, "we ask whether the error rendered the trial 'fundamentally unfair or an unreliable vehicle for determining guilt or innocence' [citation], or whether the effect of the error is 'necessarily unquantifiable and indeterminate.' " (*Id*. at p. 366, italics omitted.) That is, we assess " 'whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on' insufficient proof. ([*Victor*, *supra*,] at p. 6.)" (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 840.)

We determine the correctness of jury instructions from the entire charge of the court, not from isolated parts of an instruction or from a particular instruction. (*People v. Carrington* (2009) 47 Cal.4th 145, 192.) The Constitution does not require particular words in instructing the jury on the burden of proof, but it does require that, taken as a whole, the instructions correctly convey the concept of reasonable doubt. (*Victor v. Nebraska*, *supra*, 511 U.S. at p. 5.) "We interpret the instructions so as to support the judgment if they are reasonably susceptible to such interpretation . . . ." (*People v. Vang* (2009) 171 Cal.App.4th 1120, 1129.) In addition, when oral instructions conflict with

4

written instructions, we presume the jury followed the written instructions. (*People v. Grimes* (2016) 1 Cal.5th 698, 729.)

The Jury Instructions

After closing arguments that did not significantly address the meaning of the reasonable doubt standard, the trial court distributed copies of the jury instructions explaining the jury could take notes on them, but should disregard any deleted sections and "[o]nly consider the final version of the instructions in your deliberations." The court then directed the jury to follow the law as explained by the court, follow the instructions of the court, and consider all the instructions together.

As to the presumption of innocence and the requirement that the People prove the charges beyond a reasonable doubt, the court stated: "A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt."

The court continued, "Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. *That's the only definition I can give you. It's the same one in all 58 counties in California. The only expansion is 'abiding' means a lasting conviction.* The evidence need not eliminate all possible doubt, because everything in life is open to some possible or imaginary doubt." (Italics added.)

"In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal, and you must find him not guilty." The written instructions distributed to the jury were taken from CALCRIM No. 220 and mirrored the court's oral instructions but did not contain the italicized language quoted above.

5

<u>Application</u>

It is undisputed that CALCRIM No. 220 embodies an accurate description of the reasonable doubt standard to be applied.  (See, e.g., *People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088-1089.)  Instead, defendant complains the trial court erred in *adding* to CALCRIM No. 220 by stating that " 'abiding' means a lasting conviction" in violation of his constitutional rights.  As recognized by the California Supreme Court, an " 'abiding conviction' " is a conviction of a "lasting, permanent nature."  (*People v. Brigham* (1979) 25 Cal.3d 283, 290.)  Thus, the trial court's description of an abiding conviction as "lasting" was an accurate statement of the law.

Defendant nonetheless argues the trial court erred because in defining the term "abiding" to mean *only* "lasting," the court improperly excluded the additional requirement concerning the *depth* of the jury's conviction in the truth of the charges.  We are not persuaded that the trial court's use of "lasting" diluted the reasonable doubt standard.

Defining the term "abiding" to mean "lasting" is consistent with a common understanding of "abiding" as found in the dictionary.  For example, the Fifth Edition American Heritage Dictionary (2022) defines the term "abiding" as "[l]asting for a long time; enduring."  (Https://perma.cc/PA8U-WP6C [as of Mar. 2, 2026].)  This same dictionary defines "lasting" as "[c]ontinuing or remaining for a long time; enduring."  (Https://perma.cc/NK5L-SR7P [as of Mar. 2, 2026].)  Similarly, the Merriam-Webster Thesaurus defines both "abiding" and "lasting" as "enduring . . . having an existence or validity that does not change or diminish."  (Https://perma.cc/J9NS-J6WU and https://perma.cc/7LC7-62M5 [as of Mar. 2, 2026].)  This thesaurus also lists "lasting" as a synonym of "abiding."  (Https://perma.cc/C9LD-EJUC [as of Mar. 2, 2026].)  Thus, there is nothing in the trial court's use of the term "lasting" when explaining proof

beyond a reasonable doubt that would lead jurors to conclude that their belief in defendant's guilt must be anything less than "abiding."

Nonetheless, defendant correctly highlights that in *People v. Zepeda* (2008) 167 Cal.App.4th 25, 30-31, this court found that the "[u]se of the term 'abiding' tells the juror his conviction must be of a 'lasting, permanent nature,' and it informs him 'as to how strongly and how deeply his conviction must be held.' " Likewise in *People v. Light* (1996) 44 Cal.App.4th 879, 885, the Fifth District Court of Appeal noted the term " 'abiding conviction' " adequately conveyed "the requirement that the jurors' belief in the truth of the charge must be both long lasting and deeply felt." But neither of these cases holds that the "lasting" nature of a conviction that is conveyed when one refers to an "abiding conviction" is somehow separate from or different than a deeply felt conviction. That is, neither case suggests there is something about the word "abiding" as used in jury instructions that expands upon the common, dictionary definition of the word.

Rather, *People v. Zepeda* rejected the argument that CALCRIM No. 220 was deficient for failing to convey the depth of certitude necessary to convict. (*People v. Zepeda*, *supra*, 167 Cal.App.4th at pp. 28-32.) We disagreed with Zepeda's argument that the instruction's use of "abiding conviction" was deficient, noting "nothing requires a trial court instructing on reasonable doubt to define any amount of subjective certitude required to make a finding of guilt." (*Id.* pp. 29-30.) Nonetheless, we analyzed the word "abiding" and concluded "we cannot imagine a personal abiding conviction that is not deeply felt in the sense [Zepeda] uses those words." (*Id.* at pp. 30-31.) The same result holds true for a *lasting* conviction.

In *People v. Light*, the appellate court rejected the defendant's argument that an instruction omitting the term "moral certainty" was deficient for failing to adequately instruct on reasonable doubt. (*People v. Light*, *supra,* 44 Cal.App.4th at pp. 884-887.) Specifically, the court found the term "abiding conviction" adequately conveyed " 'the

7

very high level of probability required by the Constitution in criminal cases.' " (*Id.* pp. 887.) Nothing in that discussion establishes that a "lasting conviction" is inferior to an "abiding" one for purposes of defining reasonable doubt.

Accordingly, defendant has not shown that the trial court improperly diluted the standard of proof by defining an abiding conviction as a lasting one.

Even so, we draw to the trial court's attention the Judicial Counsel Commentary to CALCRIM No. 220 which reads, in part:

"The appellate courts have urged the trial courts to exercise caution in modifying the language of section 1096 to avoid error in defining reasonable doubt. (See *People v. Freeman* (1994) 8 Cal.4th 450, 503–504 []; *People v. Garcia* (1975) 54 Cal.App.3d 61, 63 [].) The instruction includes all the concepts contained in section 1096 and substantially tracks the statutory language."

Further, referring to the language of the then-current section 1096 which, except for deletion of language relating to "a moral certainty" and a reference to both genders, remains substantively the same today as it did in 1975, the court in *People v. Garcia, supra*, 54 Cal.App.3d at page 63, in an opinion authored by Justice Elkington, observed: "The language is derived from that written in 1850 by Chief Justice Shaw of Massachusetts, in *Commonwealth v. Webster*, 59 Mass. (5 Cush.) 295, 320. It has with near, if not complete, universality been accepted as the best definition of the concept of proof beyond a reasonable doubt. Well intentioned efforts to 'clarify' and 'explain' these criteria have had the result of creating confusion and uncertainty, and have repeatedly been struck down by the courts of review of this state."

Simply put, "an impromptu instruction on reasonable doubt is a perilous exercise." (*People v. Yoshimura* (1979) 91 Cal.App.3d 609, 632.)

We would once again urge trial court judges to resist a temptation to modify CALCRIM No. 220 when instructing a jury.

II

*Double Imposition of the Prior Serious Felony Enhancements*

Defendant argues the trial court erred in imposing four 5-year serious felony enhancements under section 667, subdivision (a) to his 25 years to life burglary term (a third strike sentence) where the court had already applied these status enhancements to his LWOP term.

In 1976, the Legislature enacted the Uniform Determinate Sentencing Act, commonly referred to as the determinate sentencing law (DSL).  (*People v. Sasser* (2015) 61 Cal.4th 1, 8 (*Sasser*); see § 1170 *et seq*.)  It found and declared " 'the purpose of imprisonment for crime is punishment' and . . . '[t]his purpose is best served by terms proportionate to the seriousness of the offense with provision for uniformity in the sentences of offenders committing the same offense under similar circumstances.' "  (*Sasser*, at p. 8.)  "The DSL's emphasis on uniform punishment marked a shift away from a system in which most prisoners were sentenced to an indeterminate range of years, usually with a maximum term of life imprisonment.  [Citation.]  The DSL replaced these indeterminate sentences with three fixed-year, or determinate, sentencing options for nearly all felony offenses."  (*Ibid*.)  "Some crimes, however, remain punishable by imprisonment for either some number of years to life, or simply 'life.' "  (*People v. Felix* (2000) 22 Cal.4th 651, 654.)  "Thus, two different sentencing schemes coexist today: one determinate, the other indeterminate."  (*Ibid*.)

"Section 1170.1, which was enacted as part of the DSL, 'generally governs the calculation and imposition of a determinate sentence when a defendant has been convicted of more than one felony offense.' "  (*Sasser*, *supra*, 61 Cal.4th at pp. 8-9.)  As part of this calculation, section 1170.1 " 'refers to two kinds of enhancements: (1) those which go to the nature of the offender; and (2) those which go to the nature of the offense.' "  (*Sasser*, at p. 10.)  The first category includes enhancements for a prior

9

serious felony conviction. (*Id*. at p. 16.) These "status-based enhancements" (*id*. at p. 12) " 'do not attach to particular counts but instead are added just once as the final step in computing the total sentence' " (*id*. at p. 10). The second category encompasses "[o]ffense-related enhancements, such as those for use of a weapon or infliction of great bodily injury, [which] may be added to any count to which they apply." (*Ibid*.)

Defendant relies upon this distinction to argue that his prior serious felony convictions should have been imposed only once, to his LWOP term. However, "the distinction between determinate and indeterminate sentences is key to understanding whether a defendant is sentenced under the DSL." (*Sasser*, *supra*, 61 Cal.4th at p. 13.) "Section 1170.1 . . . applies only to determinate sentences." (*People v. Williams* (2004) 34 Cal.4th 397, 402.) "[A] straight life sentence, as well as a sentence of some number of years to life, is not a determinate sentence within the meaning of the DS[L]." (*People v. Felix*, *supra*, 22 Cal.4th at p. 659; see also *Sasser*, at p. 13 [recognizing the DSL does not apply where application of the Three Strikes Law mandated an indeterminate term].) Accordingly, "both straight life sentences and sentences of some number of years to life are indeterminate sentences not subject to the DS[L]." (*People v. Felix*, at p. 659.) Thus, neither defendant's sentence to LWOP, nor his third strike burglary sentence to 25-years to life are subject to the limitations of section 1170.1. Given this, defendant has not shown the trial court's sentence was unauthorized.

III

*The Prior Serious Felony Enhancements on the Abstract of Judgment*

Defendant argues and the People concur that the abstract of judgment inaccurately reflects the total number of years imposed for the prior serious felony enhancements requiring correction. We agree that number 3 of defendant's determinate abstract of judgment inaccurately reflects a total of 25 years of prior serious felony enhancements, broken out as 20 years on first line and 5 years on the second line. The trial court

10

imposed four five-year prior serious felony enhancements for a total of 20 years on the murder count. We will direct the trial court to prepare an amended determinate abstract of judgment to correct this mathematical error.

IV

*The Criminal Conviction Assessment and Court Operations Assessment Fees*

Defendant argues the trial court exercised its discretion to orally impose something less than the mandatory $30 per count Criminal Conviction Assessment Fee (Gov. Code, § 70373) and the $40 per count court operations assessment fee (§ 1465.8). He posits that when the trial court said, "There is a lesser court security/criminal conviction fee, they're 60 and 40 approximately," that the court intended implied findings that defendant was unable to pay the full fees and that the court was imposing a lesser amount pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157. We do not read the record this way.

After the trial court imposed the terms for defendant's convictions and sentencing enhancements, the court moved on to what it described as: "The other less significant matters for us involv[ing] mandatory court issues." The court then went on to pronounce judgment on various items required for each sentence, including selecting a $10,000 restitution fine. When the court reached the criminal conviction assessment and court operations assessment fees the court said, "they're 60 and 40 approximately." This is an inaccurate statement of the law.

The trial court was required to impose a $30 court facilities assessment and a $40 court security fee as to each count of conviction, including those stayed pursuant to section 654. (*People v. Sencion* (2012) 211 Cal.App.4th 480, 483-484.) Thus, the trial court should have imposed two $30 court facilities assessments totaling $60 and two $40 court operations assessments totaling $80. (*Ibid.*) We see nothing in the record supporting defendant's assertion that the trial court intended to impose something less

11

than these mandatory fees. (Gov. Code, § 70373, subd. (a)(1); § 1465.8, subd. (a)(1).) On the contrary, the court had just imposed the maximum possible restitution fine of $10,000 (§ 1202.4, subd. (b)(1)), and a defendant's ability to pay is one of the considerations the court considers in setting that fine above the statutory minimum (*id.* at subds. (c)-(d)). We can and will modify the oral pronouncement to reflect the correct amounts. (*Sencion*, at pp. 484-485.) We need not correct the abstract of judgment and minute order following sentencing because these documents already reflect the correct amounts.

V

*The Parole Revocation Restitution Fine*

Defendant argues and the People concur that the trial court erred in imposing a $10,000 parole revocation restitution fine because he was sentenced to LWOP. We agree.

Section 1202.45 provides "In every case where a person is convicted of a crime and his or her sentence includes a period of parole, the court shall, at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional parole revocation restitution fine in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4." Here, the trial court imposed a 25 year to life sentence on the burglary count, which it stayed pursuant to section 654. However, because defendant was also sentenced to LWOP, the court should not have imposed the parole revocation restitution fine. (*People v. McInnis* (2021) 63 Cal.App.5th 853, 866-867.) Accordingly, we will strike the $10,000 parole revocation restitution fine and direct the trial court to prepare an amended minute order following sentencing and abstract of judgment.

12

DISPOSITION

The oral pronouncement of judgment is modified to reflect the imposition of two $30 court facilities assessments (Gov. Code, § 70373, subd. (a)(1)) totaling $60 and two $40 court operations assessments (§ 1465.8, subd. (a)(1)) totaling $80. The $10,000 parole revocation restitution fine (§ 1202.45) is stricken. The trial court is directed to prepare an amended minute order and amended abstract of judgment consistent with this opinion and forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

\_\_\_\_/s/_____
HULL, Acting P. J.

We concur:

\_\_\_\_/s/_____
ROBIE, J.

\_\_\_\_/s/_____
WISEMAN, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13